**COUNTIES CONTRACTING & CONSTRUCTION COMPANY**

v.

**CONSTITUTION LIFE INSURANCE COMPANY.**

**Civ. A. No. 87–1324.**

United States District Court, E.D. Pennsylvania.

Dec. 18, 1987.

Karen Lee Turner, Robert H. Kauffman, Reading, Pa., for plaintiff.

Thomas G. Parisi, Reading, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Plaintiff Counties Contracting & Construction Company seeks damages from Constitution Life Insurance Company for refusal to make payment to plaintiff of the proceeds of a life insurance policy. The parties have entered into a stipulation of facts, which was filed with the Clerk of Courts on May 28, 1987. Thereafter, cross-motions for summary judgment were filed. Following oral argument on November 20, 1987, I requested additional briefing to address the applicability of *In re Roach,* 824 F.2d 1370 (3rd Cir.1987). Briefing has now been completed.

This case requires me to decide whether a life insurance policy remained in effect beyond the grace period for the payment of premiums where, before the expiration of the grace period, the policy holder commenced voluntary bankruptcy proceedings under Chapter 11. I am also required to decide whether the defendant has waived the benefit of the policy provisions regarding automatic termination of the policy at the end of the grace period. Finally, I must consider whether the failure to give notice of cancellation for nonpayment of interest on outstanding loans permit plaintiff to recover.

### FACTS

The relevant facts are as follows. On March 25, 1969, defendant issued an Executive Ordinary Life Insurance Policy to plaintiff, insuring the life of James F. Cleary for the face amount of $50,000. The annual premium of $3806.65 was payable in advance on March 25. The policy provided for a 31 day grace period for the payment of the premium; this grace period would extend until April 25. Various loans were made against the policy, totalling $20,100, which amount equalled the cash or loan value of the policy.

The premium was paid each year until 1984. On or about March 9, 1984, defendant sent a regular premium notice to plaintiff. On or about March 17, 1984, defendant sent plaintiff a notice of interest due on the outstanding loans. The annual premium and interest were due on March 25, 1984 for the year beginning March 25, 1984 and ending March 24, 1985. These monies have never been paid.

On April 11, 1984, within the policy grace period, plaintiff commenced voluntary bankruptcy proceedings under Chapter 11.

On or about April 13, 1984, defendant mailed a late premium notice to plaintiff. On or about June 26, 1984, after the expiration of the policy grace period, defendant mailed a letter to plaintiff which read in part:

The yearly interest for the present loan on your life insurance policy and the annual premium are due. Your policy says this interest and premium must be paid within 31 days. Otherwise the insurance would end without further notice. Then you would no longer have your protection.

I'm sure you want to keep your insurance in force. There are three different ways to do this ...

James F. Cleary died on July 26, 1984. On or about July 30, 1984, and before having received notice of either the filing of the bankruptcy petition or of the death of James Cleary, defendant mailed a letter to plaintiff. This letter read in part:

To keep this policy in force we will need a payment of $3,574.59 ... within ten days. If we don't get it, we'll have no choice but to end the policy without value.

By letter dated September 25, 1984, Counties' former counsel advised defendant of Mr. Cleary's death and demanded payment under the policy. At no time prior to September 25, 1984 was defendant given notice of the bankruptcy proceeding.

## DISCUSSION

1. *The sole effect filing of the voluntary petition in bankruptcy during the statutory or policy grace period is to extend the grace period for 60 days from the date of bankruptcy.*

█ Plaintiff contends that the filing of the voluntary bankruptcy petition had the effect of tolling the running of the grace period under the automatic stay provisions of 11 U.S.C. § 362(a). Plaintiff's theory is that the statutory grace period creates a property interest in the policy, including the grace period, and that section 362 forbids any action on that property interest. Plaintiff argues that the broad purpose of section 362 is to provide protection to the debtor by maintaining the status quo, and that to permit the policy to lapse would alter the status quo. Plaintiff argues that the defendant had the obligation to petition the bankruptcy court to lift the automatic stay if it wished to escape the provisions of section 362.

Defendant asserts that 11 U.S.C. § 108(b), and not section 362, controls this action. Section 108(b) would extend the grace period for only 60 days from the filing of the bankruptcy petition. If defendant is correct, the grace period would have been extended until June 10, 1984, and would have expired prior to Mr. Cleary's death.

Neither the research of the parties nor that of the court has revealed any case directly on point. However, both parties rely on cases applying the stay provisions of the Bankruptcy Code to the running of statutory redemption periods following mortgage foreclosures. I agree that those cases provide a close analogy. While there is a split among the circuits as to whether section 362 or section 108(b) controls in that situation, I note that the majority of courts which have considered the question, including the only circuit court to have directly faced the question, have held that the 60 day extension of section 108(b) is to be applied. *Johnson v. First Nat'l Bank of Montevideo, Minn.,* 719 F.2d 270 (8th Cir.1983), *cert. denied,* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); *In re Kangas,* 46 B.R. 102 (Bankr.D.Minn.1985); *In re Hand,* 52 B.R. 65 (Bankr.M.D.Fla. 1985); *In re Construction Leasing & Invest. Corp.,* 20 B.R. 546 (Bankr.M.D.Fla. 1982). *See also In re 29 Newbury Street, Inc.,* 75 B.R. 650 (Bankr.D.Mass.1987) (section 108(b) applies to statutory right to cure a rent default); *In re Players' Pub. Inc.,* 45 B.R. 387 (Bankr.D.Mass.1985) (same); *In re G–N Partners,* 48 B.R. 462 (Bankr.D.Minn.1985) (debtor entitled only to 60 day extension to act on option to purchase real estate); *In re P.I.N.E., Inc.,*

52 B.R. 463 (Bankr.W.D.Mich.1985) (no extension of time in which debtor could comply with "unless" clause in oil and gas lease requiring debtor to either make payment or begin drilling by certain date). *But see In re Carr,* 52 B.R. 250 (Bankr.D. Mich.1985); *In re St. Amant,* 41 B.R. 156 (Bankr.D.Conn.1984); *In re H & W Enterprises, Inc.,* 19 B.R. 582 (Bankr.N.D.Iowa, 1982); *In re Shea Realty, Inc.,* 21 B.R. 790 (Bankr.D.Vermont, 1982); *In re Sapphire Investments,* 19 B.R. 492 (Bankr.D.Ariz. 1982); *In re Johnson,* 8 B.R. 371 (Bankr.D. Minn.1981); *In re Bennett,* 29 B.R. 380 (Bankr.W.D.Mich.1981); *In re Dohm,* 14 B.R. 701 (Bankr.N.D.Ill.1981).

The Third Circuit has not directly addressed this issue. However, important dicta contained in a recent case make clear that the Third Circuit would adopt the majority position. *In re Roach,* 824 F.2d 1370, 1372, n. 1 (3d Cir.1987). Although the district court is not technically bound by dicta in an appellate court opinion, I am persuaded by *Roach* and by the rationale of the many cases which have held that section 108(b), and not section 362(a), should be applied to the running of a statutory redemption period. I am persuaded that the same rationale should apply to the present case.

A contrary result would be alien to basic concepts of insurance. If plaintiff's argument were accepted, the debtor would retain indefinitely the *option* to make a retroactive election to carry insurance. It takes no business acumen to realize that the debtor would elect to pay the premium only when, and if, an event giving rise to a claim arose. Thus, the debtor would have all the benefits of insurance with no risk. The insurance company would be forced to provide full coverage without being permitted to spread the risk. Actuarial computations would become difficult if not impossible.

Plaintiff's argument that the insurance company could always petition the court to lift the stay does not alleviate these concerns. If the bankruptcy court could be expected to grant such a petition routinely, there seems little point in placing the burden of filing the petition on the insurance company. If the bankruptcy court denied the petition, the insurance company would be placed in the position I have already described. Moreover, this argument has no weight in the present case where the insurance company was given no notice of the bankruptcy proceedings.

Therefore, I hold that the statutory and policy grace period was extended for 60 days from the date of the filing of the bankruptcy petition, or until June 10, 1984. Thus, the grace period had expired before the death of James Cleary.

*2. Defendant has not waived the provisions regarding the lapse of the policy for nonpayment of premiums at the end of the grace period.*

█ Plaintiff contends that the letters of June 26, 1984 and July 30, 1984 treated the policy as still in effect on those dates, thereby waiving any policy provision regarding lapse of coverage for nonpayment. Since Mr. Cleary died on July 26, 1984, four days before the second letter, plaintiff's argument, if correct, would entitle plaintiff to recovery in this case. However, after reviewing those letters and the insurance policy in their entirety, I am persuaded that the letters merely contained an offer to reinstate the lapsed policy.

█ The doctrines of waiver and estoppel cannot apply where no contract exists. *See Donovan v. New York Cas. Co.,* 373 Pa. 145, 94 A.2d 570 (1953); *Kitchen v. Automobile Ins. Co. of Hartford, Conn.,* 299 Pa.Super. 256, 445 A.2d 552 (1982); *Pfeiffer v. Grocers Mut. Ins. Co.,* 251 Pa. Super. 1, 379 A.2d 118 (1977); *Wasilko v. Home Mut. Cas. Co.,* 210 Pa.Super. 322, 232 A.2d 60 (1967). Plaintiff argues that 40 P.S. § 510 and 40 P.S. § 510.1 establish that the contract still existed as of June 26, 1984 and July 30, 1984. As already discussed, the grace period of 40 P.S. § 510 was not indefinitely extended by the filing of bankruptcy, and expired on June 10, 1984. For the same reasons, the nonforfeiture provision of 40 P.S. § 510.1 expired no later than June 10, 1984. Therefore, the contract did not exist under Pennsylvania law beyond that date.

At no time did plaintiff accept the offer to reinstate the policy by paying the premium and interest.

For these reasons, there has been no waiver of the provisions regarding the lapse of the policy.

*3. There is no requirement of notice of cancellation for nonpayment of interest.*

■ Plaintiff's final argument is that, under the loan agreements on the insurance policy, defendant was required to take affirmative action to cancel the policy for nonpayment of interest. I find no such requirement in the loan agreements and, therefore, I reject this argument.

■ Alternatively, I note that the policy lapsed for the additional reason of nonpayment of the premium. Therefore, even if defendant were required to give notice before terminating the policy for nonpayment of interest, the failure to do so would not alter the result in this case.

For these reasons, the defendant's motion for summary judgment will be granted. Plaintiff's motion for summary judgment will be denied.