**COUNTIES CONTRACTING AND CONSTRUCTION COMPANY, Debtor–in–Possession, Appellant,**

v.

**CONSTITUTION LIFE INSURANCE COMPANY.**

No. 88–1030

United States Court of Appeals, Third Circuit.

Argued June 14, 1988.

Decided Aug. 31, 1988.

Raymond C. Schlegel (argued), Roland & Schlegel, P.C., Reading, Pa., for appellant.

Thomas G. Parisi (argued), O'Pake, Malsnee & Orwig, Reading, Pa., for appellee.

Gordon G. Busdicker, Gordon B. Conn, Jr., Clark Whitmore, Faegre & Benson, Minneapolis, Minn., John E. DeWald, Asst. Counsel, The Prudential Ins. Co. of America, Dresher, Pa., for The Prudential Ins. Co. of America as amicus curiae.

Before MANSMANN, SCIRICA and COWEN, Circuit Judges.

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

We are asked to decide whether a life insurance policy remained in effect beyond the extended period allowed for payment of premiums when, prior to the grace period's expiration, the policyholder commenced voluntary bankruptcy proceedings under Chapter 11 of the Bankruptcy Code.

The policyholder, Counties Contracting and Construction Company, appeals from an order granting summary judgment in favor of Constitution Life Insurance Company affirming the insurance company's refusal to make payment of insurance proceeds to Counties, 81 B.R. 306. Counties, now a Chapter 11 debtor, argued that certain provisions of the Bankruptcy Code, in addition to principles of waiver and estoppel, precluded Constitution Life from denying the payment of the proceeds. We conclude that although Counties was afforded a degree of relief by one rehabilitative provision of the Code, other provisions were either inapplicable by law or because Counties did not act in conformity with the statutory requirements necessary for entitlement to the relief afforded by the section. We also determine that Constitution Life did not, by reason of language utilized by it in certain letters to Counties, waive its right to cancel the policy for non-payment of amounts owing to it. We will affirm the decision of the district court.

## I.

The facts were stipulated to by the parties and are as follows: On March 25, 1969, a life insurance policy was issued to Counties insuring the life of one of its employees, James Cleary. The annual premium for the policy was due in advance on March 25 of each year. In conformity with Pennsylvania law [1] the policy provided a 31–day grace period for the payment of the premium.

From 1969 through 1983, the advance premium was always paid by Counties. In March 1984, however, Counties did not pay the premium nor the interest due on various loans which had been taken out against the value of the policy.

On April 11, 1984, within the policy grace period, Counties filed for voluntary bankruptcy. Two days later Constitution Life mailed a late premium notice to Counties and then, on June 26, sent an additional letter:

> The yearly interest for the present loan on your life insurance policy and the annual premium are due. Your policy says this interest and premium must be paid within 31 days. Otherwise the insurance would end without further notice. Then you would no longer have your protection....

> I'm sure that you want to keep your insurance in force.... [W]e urge you to pay the premium and repay the loan. Then you'll once again have the full protection and cash value of your policy.

The insured, James Cleary, died on July 26, 1984. On July 30, 1984, without knowledge of either the insured's death or Counties' bankruptcy, Constitution Life mailed another letter to Counties: "[T]o keep this policy in force, we will need a payment of $3,574.59 ... within ten days. If we don't get it, we'll have no choice to end the policy without value." This was Constitution Life's final communication with Counties concerning the payment of the amounts due. It is undisputed that Counties did not

reply nor did it tender any premium payment or explanation to Constitution Life.

On or about September 25, 1984, Counties informed Constitution Life of Cleary's death and demanded payment under the policy. Payment was refused by Constitution Life.

Counties filed a complaint against Constitution Life in the United States Bankruptcy Court to compel turnover of the policy proceeds. After Constitution Life filed its answer, denying that the proceeds were due, the parties entered into a stipulation to withdraw reference from the bankruptcy court and proceeded in the district court. Counties and Constitution Life then filed a stipulation of uncontested facts and cross-motions for summary judgment.

On December 21, 1987, the district court denied Counties' motion for summary judgment and granted Constitution Life's similar motion. The district court found that filing the voluntary bankruptcy petition during the statutory grace period extended the grace period for 60 days under 11 U.S.C. § 108(b) (1978) (amended 1984). After this period, the policy expired. The district court then held that Counties' position that the automatic stay provision of 11 U.S.C. § 362(a) precluded Constitution Life from denying it the benefits of the policy would be alien to basic concepts of insurance law since it would permit Counties to "retain indefinitely the option to make a retroactive decision to carry insurance."

The district court also concluded that the letters sent by Constitution Life to Counties concerning Counties' obligations did not constitute a waiver of the policy provisions regarding lapse of the policy for nonpayment of premiums at the end of the grace period. The court found that doctrines of waiver and estoppel do not apply in the absence of a contract between the parties.

Finally, the district court rejected Counties' argument that Constitution Life was required to take affirmative action to cancel the policy for nonpayment of interest

---

**1.** 40 P.S. § 510 mandates that a 30–day or one month grace period for payment of premiums be afforded holders of life insurance policies.

During this extended grant of time the provisions of the policy remain in full force and effect.

due for the loan taken against the policy. The district court first found that the policy contained no requirement of notice in this regard and then noted additionally that the policy was also cancelled for nonpayment of the premium. Thus, failure to give notice of cancellation for non-payment of the interest due would not alter the result of the case.[2]

Counties has appealed the grant of summary judgment in favor of Constitution Life pursuant to 28 U.S.C. § 1291.

Our scope of review of the grant of summary judgment mirrors the test which the district court was to apply initially in determining the merits of the motion. In this case, given the stipulation as to the facts, we must decide whether Constitution Life, based upon these facts, was entitled to judgment as a matter of law. *Jackson v. University of Pittsburgh*, 826 F.2d 230 (3d Cir.1987).

2. The district court did not address the issue pertaining to the alleged application of 11 U.S.C. § 365, relating to assumption or rejection of executory contracts. Constitution Life has claimed that Counties failed to raise this argument before the district court and should now be estopped from arguing its applicability before us. We find that Counties argued the application of § 365 in its reply brief submitted to the district court. We will therefore address the merits of the argument.

3. "Property of the estate" is broadly defined in 11 U.S.C. § 541(a) as "all legal or equitable interests of the debtor in property as of the commencement of the case." The legislative history makes it plain that the scope of this paragraph is pervasive. "It includes all kinds of property, ... tangible or intangible...." H.R. Rep. 595, 95th Cong., 1st Sess. 367 (1977), U.S. Code Cong. & Admin.News 1978, pp. 5787, 6323, *reprinted in* L. King, Collier on Bankruptcy App. 2 (1987). "'[A]n interest is not outside the reach of § 541 because it is novel or contingent or enjoyment must be postponed.'" In Re Bialac, 712 F.2d 426, 431 (9th Cir.1983), *quoting* Segal v. Rochelle, 382 U.S. 375, 379, 86 S.Ct. 511, 515, 15 L.Ed.2d 428 (1966).

4. Prudential Insurance Company of America filed an amicus brief to advance its position that the extension of time for performance provided under § 108(b) does not confer coverage to Counties under the Constitution Life policy.
Prudential asserts that although the district court correctly held that § 108(b) operated to the exclusion of § 362, § 108(b) should not be construed to give debtors valuable contract

## II.

We must first determine at what point, if any, Counties' failure to pay the premium extinguished its right to the proceeds of the policy. When Counties filed its petition, in accord with the fundamental principle of bankruptcy enunciated in *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), any property rights accruing under the insurance policy became property of the debtor's estate.[3] There appears to be no disagreement that the grace period of the policy was properly a part of the property of the debtor's estate.

The question that concerns us is when, and if, the grace period expired and ceased being classified as property of the estate. Constitution Life asserted and the district court agreed that 11 U.S.C. § 108(b) extends the statutory grace period of the policy for 60 days from the commencement of the bankruptcy proceedings.[4] Counties,

rights unnecessary to carry out the limited opportunity-to-act purpose of § 108(b). Prudential urges that the right extended by § 108 is only the right to pay delinquent premiums until 60 days after the petition is filed. It does not, argues Prudential, compel an insurer to pay claims that accrued after the contractual grace period when the debtor elected not to cure the delinquent premium payment within the extension period provided by § 108(b). In effect, Prudential is claiming that although § 108(b) gives the debtor the right to make a delinquent payment for an additional amount of time, coverage is still limited to the contractual grace period of 31 days.

We find the argument of Prudential too restrictive a reading of § 108(b). First, the "curing the default" language of § 108, cited by Prudential as governing, is inapposite. Under the terms of the policy, the insurance contract is not in default during the grace period, rather its terms remain in force. If death occurred during the grace period, the amount of the overdue premium would be deducted from the proceeds.

We agree that the intent of the grace period so extended is to give Counties additional time in which to pay the premium; however, payment made during this period would not be equivalent to curing a default, rather it would represent an act necessary to continue the policy in effect. Thus, the relevant statutory wording here is the provision in § 108(b) which grants a 60–day extension to "perform other similar acts."

Therefore, under § 108(b), coverage and entitlement to proceeds continue during the entire 60–day extension.

on the other hand, argues that the automatic stay provision of 11 U.S.C. § 362(a), specifically, the prohibition of § 362(a)(3)[5] against acts to obtain possession of property of the estate, tolls indefinitely the running of the grace period.

In relevant part, § 108(b) of the Code states:

> (b) Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor ... may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) 60 days after the order for relief.

We cannot find in the legislative history of § 108(b) any discussion that statutory grace periods of *insurance policies* were specifically contemplated by this section. However, in delineating an example of a proof of a claim or loss entitled to an extension of time, reference to an insurance claim is noted. H.R.Rep. 595, 95th Cong., 1st Sess. 318 (1977), *reprinted in* L. King, Collier on Bankruptcy App. 2 (1987). We can consider this as some indication that issues arising under insurance policies were considered by Congress in enacting this section.

Application of § 108(b) to a statutory grace period appears to be one of first impression in this circuit, although the question was addressed in dicta in *In Re*

*Roach*, 824 F.2d 1370, 1372 n. 1 (3d Cir. 1987). In *Roach*, in addressing the application of 11 U.S.C. § 1322(b) to a mortgage default during the running of a state-created redemption period, we stated that § 108(b) simply extends the state law period of redemption and that § 362 did not otherwise toll the running of the period. This language was an adoption of the views of the other circuits who had addressed the issue. *E.g. Johnson v. First National Bank of Montevideo, Minn.*, 719 F.2d 270 (8th Cir.1983) *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); *In Re Tynan*, 773 F.2d 177 (7th Cir.1985).[6]

In *Johnson v. First National Bank*, 719 F.2d at 276, the Court of Appeals for the Eighth Circuit held that the automatic stay provision of § 362(a) prohibited "certain types of *affirmative actions*" (emphasis in original) and did not affect or override the explicit running of time dictated by § 108(b). *Id.* at 278.

In *In Re Tynan*, 773 F.2d at 180, the Court of Appeals for the Seventh Circuit, addressing the § 362 versus § 108 relationship, cited with approval *In Re Petersen*, 42 B.R. 39 (Bankr.D.Or.1984) which held that the running of a statutory redemption period was not an act or proceeding within the meaning of § 362. The court then affirmed the district court's decision that extension of a redemption period by operation of § 362 constituted an impermissible creation of a property right.

Although some courts have decided that § 362 should be liberally construed to suspend the statutory period of redemption, *see In Re Jenkins*, 19 B.R. 105 (Bankr.D.C. Colorado 1982), and *In Re Johnson*, 8 B.R. 371 (Bankr.D.Minn.1981), most courts have held that § 362's prohibition against ac-

---

**5.** In relevant part, § 362 reads:

> § 362. Automatic stay
>
> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, operates as a stay applicable to all entities, of—
>
> * * * * * *
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

**6.** Although these cases concerned statutory redemption periods following mortgage foreclosures, we agree with the district court that they invite close comparison to the insurance policy grace period at issue here.

tions taken to obtain possession of the estate's property does not affect the tolling of time. *In Re Markee,* 31 B.R. 429 (Bankr.D.C.Idaho 1983).

We do not agree with those courts which have decided that § 362 can effectuate an indefinite stay of the running of a statutory grace period. That Congress intended § 362 to prohibit only certain types of affirmative action is evidenced by the statute's language, (*i.e.,* "enforcement"; "proceeding"; "act to obtain") and by its corresponding non-utilization of terms which appropriately describe the extension or suspension of a statutory period. To posit the automatic and statutorily-mandated running of a grace period as an act or proceeding within the meaning of § 362 would be to enlarge property rights granted and circumscribed by state law. *In Re Tynan,* 779 F.2d at 180. Also, an interpretation of ` 362 as an indefinite stay of the statutory period would render the pertinent time allotments of § 108 extraneous and unnecessary. *Johnson v. First National Bank,* 719 F.2d at 278.

Unlike the affirmative action language of § 362(a), which does not appear to affect the running of specific time periods, § 108(b) explicitly grants the debtor additional time in which to perform an act such as that of securing a default under a grace period. Where one section of the bankruptcy code explicitly governs an issue, another section, particularly one which is general in nature, will not be interpreted to create conflict.

Despite Counties' argument that the purpose of § 362 is to maintain the status quo of the debtor's property rights by forbidding acts taken to eradicate the property interest provided by the grace period, the effect of this rationale would permit Counties to forestall taking any action concerning renewal throughout the duration of the bankruptcy, clearly an unintended result.

■ We today mirror the reasoning of *Johnson* and *Tynan* and elevate the dicta in *Roach* to our holding in this case. Specifically, we conclude that when a bankruptcy petition is filed before the expiration of a statutory grace period, if need be

§ 108(b) can extend the grace period for 60 days from the date of the filing of the petition. Conversely, § 362 is inoperable to further stay the running of the period.

■ Given our conclusion that § 362 cannot operate to stay indefinitely the expiration of the statutory grace period, the only extension of time available to Counties was that provided by the express terms of § 108(b). Since its petition in bankruptcy was filed on April 11, 1984, § 108(b) would extend the grace period until June 10, 1984. The 60-day period having passed prior to the insured's death, the policy lapsed in accordance with its provisions and with Pennsylvania law.

### III.

Counties next argues that 11 U.S.C. § 365 (1978) (amended 1984), relating to the assumption or rejection of executory contracts, operated to keep the insurance contract in effect beyond the statutory redemption period.

Section 365 reads as follows:

§ 365. Executory contracts and unexpired leases.

(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c) and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

The Code does not define the term executory contract, however, courts have generally employed what has become known as the "Countryman" definition of an executory contract, *i.e.*, a contract under which the obligations of both the bankrupt and the other party remain so far unperformed that failure of either to complete performance would constitute a material breach excusing performance of the other. Countryman, Executory Contracts and Bankruptcy: Part 1, 57 Minn.L.Rev. 439, 460 (1973).

When the Bankruptcy Code was adopted, Congress left the term undefined: "Its general meaning is well understood, and any succinct statutory language risks an unintended omission or inclusion." Report of the Commission of Bankruptcy Laws of the United States, H.R.Doc. No. 93–137, 93rd Cong. 1st Sess, Part 1, 199 (1973). A bit of amplification is provided by the legislative history of § 365: Although "[T]here is no precise definition as to what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides." H.R.Rep. 595, 95th Cong., 1st Sess. 347 (1977), U.S. Code Cong. & Admin.News 1978, p. 6303, *reprinted in* L. King, Collier on Bankruptcy App. 2 (1987).

The question of whether an insurance contract is executory in nature has not been afforded a uniform response by the courts. In the cases holding that an insurance contract is executory, the courts found the requisite reciprocal obligations in the policyholder's obligation to make premium payments and the insurance company's obligation to keep the insurance in effect. *See, e.g., In Re Gamma Fishing*, 70 B.R. 949, (Bankr.S.D.Cal.1987). Those cases to the contrary suggest that there is no obligation on the part of the policyholder to make the payments. *See, e.g., In Re Gladding Corp.*, 22 B.R. 632 (Bankr.D.Mass. 1982). If there is a default in premiums, the policy lapses. This activity, the nonexecutory advocates suggest, does not rise to the level of performance which would constitute a material breach.[7]

Although our inclination is to recognize the continuing obligations of the parties as the central feature of the contract and thus labeling an insurance contract as one which is executory in nature, we need not reach this issue. Section 365 requires action by the debtor which concededly was not taken here.

Section 365(a) permits a debtor, subject to court approval, to assume or reject any executory contract of the debtor. We have already determined that during the 60–day extended grace period provided by § 108(b), the insurance contract was still in effect. However, during this period Counties took no initiative to acquire the court's approval to accept the contract. This approval was not optional; rather, it is mandated for effective assumption under the statute.

After the 60–day period had run, Counties was then in default. Section 365(b)(1) permits the assumption of a default in an executory contract provided that the trustee cures or provides adequate assurance that the default will be cured. After the 60–day period expired, Counties remained inactive in any attempt to cure the default or to make assurances that this was its intent. Although given adequate notice by Constitution Life that the premiums and interest due must be paid to keep the policy in effect, Counties paid no heed to the reminder and did not contact the insurance company until several months after the death of Cleary. Most importantly, Counties once again failed to petition the court, as required, to accept the contract.

Counties relies heavily on *Moody v. Amoco Oil Co.*, 734 F.2d 1200 (7th Cir.), *cert. denied*, 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984). This case is easily distinguishable and in fact supports the position that affirmative action is required by the debtor to assume an executory con-

---

7. One commentator advances a middle ground position that an insurance contract is executory in a limited sense that it is not executed until payment of a sum after loss. It is not fully executory, however, for after the payment of premiums by the insured, the contract is executed as to him, although executory as to the insurer. 1 Couch on Insurance 2d, § 1:5 (1984).

tract. In *Moody,* the debtor initiated an adversary proceeding in bankruptcy court for the purpose of arguing the merits of the assumption of the contract. Counties took no such comparable action here and cannot argue its intangible right to do so. "To prevent the relationship [of the contracting parties] from terminating, some affirmative action on the part of the debtor was needed." *Aetna Casualty and Surety Co. v. Gamel,* 45 B.R. 345, 349 (Bankr. N.D.N.Y.1984).

Despite Counties' argument that it had until confirmation of the bankruptcy plan to assume or reject this contract, we find, instead, as an alternative holding concerning the inapplicability of § 365, that once the 60–day period expired without any action being taken by Counties to assume the contract, the contract expired. Once the contract is no longer in existence, the right to assume it is extinguished. A contract may not be assumed under § 365 if it has already expired according to its terms. 2 Collier on Bankruptcy ¶ 365.04; *In Re Anne Cara Oil Co.,* 32 B.R. 643 (Bankr.D. Mass.1983).

### IV.

■ Counties also claims that by letters dated June 26 and July 30, Constitution Life waived the provision of the policy regarding lapse for non-payment of premiums. Counties argues that the language of the letters sent by Constitution Life demonstrate that at the time of the insured's death, Constitution Life was continuing to treat the policy as a viable instrument.

The district court held that the letters merely contained an offer to reinstate the lapsed policy. The court concluded that the doctrines of waiver and estoppel could not apply since, after the running of the 60–day grace period sanctioned by § 108, no contract existed. *Donovan v. New York Casualty Co.,* 373 Pa. 145, 94 A.2d 570 (1953).

We acknowledge that ambiguous language concerning the terms of an insurance policy is to be construed against the insurer. Nonetheless, we are unable to find that the letters, no matter how inartfully worded, operated as a waiver of the terms of the policy concerning Constitution Life's right of cancellation for non-payment of the amounts due.

The general rule in Pennsylvania is that, in the absence of a countervailing statute, a right of cancellation in an insurance policy is effective according to the terms of that policy. *Hanna v. Reliance Insurance Co.,* 402 Pa. 205, 166 A.2d 877 (1961). The policy in this case lapsed by its terms, both for failure to pay the premium and failure to pay the interest, on June 10, 1984. Beyond that date, Pennsylvania law dictates that the contract no longer existed and the letters by Constitution Life constituted only an offer to reinstate the policy.

In *Schifalacqua v. CNA Insurance Co.,* 567 F.2d 1255 (3d Cir.1977), a case decided under Pennsylvania law, we held that the insured's failure to make the required premium payment before the expiration of the grace period rendered the insurance contract forfeitable at the option of the insurer. We also decided that the insured's acceptance of the late payment implied a waiver of forfeiture from the date of acceptance only.

Based on our teachings in *Schifalacqua,* we conclude that the letters here did not represent a waiver of Constitution Life's right of cancellation. At best, if Counties *had* tendered the overdue premium and interest payment, the reinstatement provision of the policy would have been triggered and the rights of the parties would have been redefined by that section. The reinstatement provision required that the insured present evidence of insurability, obviously a physical impossibility here since Mr. Cleary died on July 26, 1984. Considering Counties' failure to respond to the offer to reinstate and the insured executive's death, the policy and its accompanying rights no longer exist in any form.

### V.

■ Finally, Counties argues that the loan agreement on the insurance policy required written notice of cancellation for

nonpayment of interest. The loan agreement provides that "[I]f the total indebtedness on the policy equals or exceeds the available loan value, the company will cancel the policy and will not be required to pay any claim after cancellation." Counties asserts that since this requirement was not complied with, and the language of the loan agreements have modified the terms of the original policy, there could be no effective cancellation of the policy without written notice.

We decide first that this language does not compel affirmative cancellation activity requiring written notice. Second, and in accord with the district court, we note that the policy had lapsed also for the nonpayment of the premium. Therefore, even if notice was required for termination for failure to make the interest payment, the bottom line of cancellation would not be erased.

### VI.

The only event which propelled Counties into initiating any inquiry concerning its rights under the Constitution Life insurance policy was the death of its insured executive. Prior to this, within or without the confines of the provisions of the Bankruptcy Code, Counties made no attempt to discover which rights, if any, existed under the contract. It would be an unintended result of the rehabilitative goal of the Bankruptcy Code to allow its provisions to be utilized by debtors to enlarge pre-petition property rights.

For all these reasons, we will affirm the entry of summary judgment in favor of Constitution Life.