**In the Matter of DELEX MANAGEMENT, Debtor.**

**Bankruptcy No. GM 93–90004.**

United States Bankruptcy Court, W.D. Michigan, N.D.

June 2, 1993.

Patrick J. Potter, Detroit, MI, for D & N Sav. Bank, F.S.B.

John T. Piggins, Grand Rapids, MI, for Delex Management.

## OPINION REGARDING TIME TO CURE EXECUTORY LAND CONTRACT AND APPLICABILITY OF AUTOMATIC STAY

JAMES D. GREGG, Bankruptcy Judge.

### ISSUES

Does the automatic stay toll the running of a land contract forfeiture judgment redemption period? Is the creditor entitled to relief from stay to take possession of real property subject to a land contract?

### PROCEDURAL BACKGROUND

On January 6, 1993, Delex Management, "Debtor", filed its voluntary petition under chapter 11 of the Bankruptcy Code.[1] On March 1, 1993, D & N Savings Bank, F.S.B., the "Bank", filed its motion for relief from automatic stay and other related relief.[2] Upon filing of its motion, the

---

1. The Bankruptcy Code, as amended, is set forth in 11 U.S.C. §§ 101–1330. Unless otherwise noted, all future statutory references are to title 11 of the United States Code, sometimes referred to as the "Bankruptcy Code" or "Code".

2. The motion is entitled "Motion of D & N Savings Bank, F.S.B. Seeking (I) an Order Granting Relief From the Automatic Stay Pursuant [to] Sections 362(d) and 108(b) or in the Alternative, Requiring the Debtor to Assume or Reject Land Contract and to Cure by March 30, 1993 Pursuant to Sections 365(d)(2) and 108(b) and (II) Requiring the Debtor to Compensate D & N Savings Bank, F.S.B. on an Administrative Priority Basis for Debtor's Post–Petition Use of

Bank filed a memorandum of law in support of the requested relief. On April 12, 1993, the Debtor filed its response to the Bank's motion. On that date, the Debtor also filed its memorandum of law in support of its position.

A preliminary hearing with regard to the motion was scheduled to take place on March 25, 1993, in the bankruptcy courtroom in Marquette, Michigan. Pursuant to consent of the parties, the contested matter was adjourned to a final hearing which took place on April 21, 1993, in Marquette, Michigan. At the final hearing, the parties stipulated to the admission of certain exhibits without testimony, and the court heard argument of counsel. The court took the matter under advisement pending release of this written opinion.[3]

The court has jurisdiction over this contested matter. 28 U.S.C. § 1334. This matter is a core proceeding over which the court has authority to enter a final order or judgment. 28 U.S.C. §§ 157(b)(1) & 157(b)(2)(A) & (G). The following constitutes the court's findings of fact and conclusions of law. FED.R.BANKR.P. 7052.

### FACTS

The Debtor is a partnership doing business as the Ramada Inn and the Rodeway Inn in Mackinaw City, Michigan. On June 5, 1980, the Debtor purchased the Ramada Inn real property from Lawrence A. Yax and Betty Lou Yax. The purchase price of the real property was $2,580,000.00. The Debtor paid $315,000.00 as a downpayment. The balance of the purchase price, $2,265,000.00, was to be paid pursuant to a land contract. (Exh. A.)

In January 1986, Lawrence and Betty Yax, pursuant to a Seller's Assignment of Land Contract, assigned their vendor's interest in the land contract to the Bank. (Exh. B.) On January 9, 1986, Lawrence and Betty Yax executed a Warranty Deed regarding the Ramada Inn real property

which conveyed fee title to the Bank. (Exh. C.) The conveyance was subject to the rights of the Debtor under the terms of the prior land contract, as well as prior mortgage liens and other encumbrances.

From January 1986 until January 1992, the Bank collected monthly payments from the Debtor under the land contract. The Debtor failed to make the February 1, 1992, payment to the Bank. Subsequently, the Debtor failed to make monthly payments due in May, June, July, August, September, and October 1992.

On or about October 16, 1992, the Bank sent the Debtor a Forfeiture Notice. (Exh. D.) The notice stated that, as of October 16, 1992, there was $222,808.80 in delinquent principal and interest owed under the land contract. The notice also asserted that there was $140,417.00 in unpaid real property taxes required to be paid under the terms of the land contract.

On November 24, 1992, the Bank filed its Complaint for Possession After Land Contract Forfeiture in the 90th Judicial District Court, State of Michigan. (Exh. E.) The summons scheduled a hearing on the complaint for December 30, 1992, at 8:30 a.m; personal service was made upon the Debtor's representative. (Exh. E.) After the hearing, the state court issued its Judgment of Possession After Land Contract Forfeiture. (Exh. F.) The judgment provided that possession was awarded to the Bank as a result of the Debtor's breach of the land contract. The state court determined the arrearages to be $232,926.44, including interest, as of December 30, 1992. The judgment further provided that the Debtor had 90 days, until March 30, 1993, to cure the breach. In the event the judgment amount was not paid on or before March 30, 1993, the judgment provided that an order of eviction may be issued.

Seven days later, the Debtor filed its chapter 11 case. No money has been paid

---

the Property and to Make Reasonable Use Payments Thereon".

3. At the conclusion of the hearing, the court ordered the Debtor to pay the Bank the sum of

$21,930.00 on or before June 1, 1993, as estimated reasonable rent regarding the Bank's land contract interest. That payment is equal to one monthly land contract payment.

by the Debtor to the Bank subsequent to the commencement of this case.

## DISCUSSION

■ A land contract[4] is an executory contract within the meaning of the Bankruptcy Code. *Terrell v. Albaugh (In re Terrell)*, 892 F.2d 469 (6th Cir.1989). "Under a land sale contract, unlike most mortgages, 'performance remains due to some extent on both sides' and the failure of either party to fulfill his or her obligations would excuse the other from continued performance." *Id.* at 473. After review of the land contract in this contested matter the court finds that there are performance obligations by both the Bank vendor and Debtor vendee.[5] (Exh. A.)

■ Assumption or rejection of an executory land contract is governed by the Bankruptcy Code. § 365; *In re Terrell*, 892 F.2d at 471; *cf. Matter of Cybernetic Servs., Inc.*, 94 B.R. 951, 953 (Bankr. W.D.Mich.1989) (§ 365 procedural and substantive assumption requirements regarding unexpired lease discussed). *See generally* Robert A. Hendricks and Joan Schleef, *Land Contracts in Bankruptcy: Terrell Revisited*, Mich.Real Prop.Rev., Summer 1991, at 57 (effect of *Terrell* decision upon treatment of land contracts in bankruptcy discussed). Regardless of the bankruptcy case chapter,[6] the rights of a debtor vendee are limited by the executory contract assumption provisions rather than expanded by the various secured creditor cramdown provisions. *Compare* § 365 *with* §§ 1129(b)(2)(A), 1225(a)(5)(B) and 1325(a)(5)(B); *In re Terrell*, 892 F.2d at

471, 473 (vendor's land contract plan treatment limited by § 365 rather than governed by secured creditor cramdown under § 1225). Under the Bankruptcy Code, the Debtor has no rights to modify the land contract; it must assume or reject it. *Cf. Matter of Cooper*, 98 B.R. 294 (Bankr. W.D.Mich.1989) (chapter 13 debtor unable to modify land contract to make periodic payments on fully-matured "balloon" obligation).

■ The Debtor's and Bank's rights and remedies under the land contract are determined by state law unless a federal interest requires a different result. *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). This court should not create additional rights or remedies in favor of the Debtor vendee, or the Bank vendor, where such rights or remedies do not exist under applicable state law or the Bankruptcy Code. *Matter of Schewe*, 94 B.R. 938, 949–50 (Bankr. W.D.Mich.1989). As of the bankruptcy case filing date, what interest did the Debtor have in the real property subject to the land contract?

Prior to the filing of the Debtor's chapter 11 case, the Bank had commenced enforcement of its land contract rights by forfeiture and summary proceedings. Mich. Comp.Laws Ann. §§ 600.5701–5759. The Bank served a Forfeiture Notice dated October 16, 1992, upon the Debtor. Under Michigan law, the Debtor has 15 days (or longer if agreed in writing) to cure the material breaches of the contract. *Id.* at § 600.5728. If the past-due payments and other material breaches are not timely

---

**4.** Under Michigan law, a land contract is "an executory contract for the purchase of the premises." Mich.Comp.Laws Ann. § 600.5726. "'Premises' includes lands, tenements, condominium property, cooperative apartments, air rights and all manner of real property." *Id.* at § 600.5701(b).

**5.** The Sixth Circuit has adopted the so-called Countryman definition of an executory contract. *In re Terrell*, 892 F.2d at 471 n. 2. In an earlier old Act case, the Sixth Circuit acknowledged the Countryman definition is helpful, but does not resolve all problems.

"The key, it seems, to deciphering the meaning of the executory contract rejection provisions, is to work backward, proceeding from an examination of the purposes rejection is expected to accomplish. If those objectives have already been accomplished, or if they can't be accomplished through rejection, then the contract is not executory within the meaning of the Bankruptcy Act."
*Chattanooga Memorial Park v. Still (In re Jolly)*, 574 F.2d 349, 351 (6th Cir.1978). Regardless of whether the *Terrell* or *Jolly* analysis is utilized, the parties' land contract is executory.

**6.** Section 365 applies to all chapters of the Code. § 103(a).

cured, the contract is forfeited.[7] *Id.* In this case, the Debtor failed to cure after receipt of the notice of forfeiture.

The vendor may then institute a proceeding to recover possession of the land contract premises by utilizing proper procedures. *Id.* at §§ 600.5726, 600.5735. After trial, if the judge (or jury) finds the plaintiff vendor is entitled to possession, a judgment is entered which may later be enforced by a writ of restitution. *Id.* at § 600.5741. If money defaults are determined to exist, the "amount due or in arrears at the time of trial ... shall be stated in the judgment for possession." *Id.* "The

statement in the judgment for possession shall be only for the purpose of prescribing the amount which, together with taxed costs, shall be paid to preclude issuance of the writ of restitution." *Id.* On December 30, 1992, the Bank obtained its Judgment of Possession After Land Contract Forfeiture. (Exh. F.) To preclude issuance of a writ of restitution, the Debtor was obligated to pay $232,926.44.

The summary proceedings statute provides for a redemption period.[8] In this matter, the Debtor's state statutory redemption period to cure was 90 days from the date of the judgment of possession, i.e.,

7. The time when the vendor is entitled to possession appears to be legally unsettled. The statute requires the defaults stated in the notice of forfeiture to be cured or the vendee "to deliver possession of the premises." *Id.* at § 600.-5728(1).

In *Gruskin v. Fisher*, 405 Mich. 51, 273 N.W.2d 893 (1979), dicta by the Michigan Supreme Court raises some doubt when the vendee's right to possession is transferred to the vendor.

In the context that summary proceedings are the customary form of action against a defaulting purchaser, *forfeiture should not*, despite the formal language of notices of intent to forfeit and of forfeiture (which we could henceforth change by court rule), *be viewed as anything other than a condition precedent to the commencement of summary proceedings.* The function of the notices is primarily to inform the purchaser that unless he cures the delinquency he faces court action.

Sending a notice of forfeiture is, except in the extraordinary case, but an early step in a seller's often long drawn out efforts to obtain compliance by a delinquent purchaser with his obligations under the contract. If the purchaser's response to the notice is, atypically, "I am willing to surrender my equity", or if he so responds after the commencement of summary proceedings, the seller must, indeed, by reason of the statute, make an election. He is then required to decide whether to accept possession or to seek a deficiency judgment.

*Gruskin v. Fisher*, 405 Mich. at 59–60, 273 N.W.2d at 897 (emphasis added). These statements would seem to indicate that the vendor's right to possession is established upon a judgment of possession.

However, the vendor may be entitled to possession at the expiration of the time to cure under the forfeiture notice. This interpretation is supported by Michigan case law. "The meaning of the statute is clear: within 15 days after service of notice of forfeiture, the vendee must either pay what is owed under the contract or

deliver possession of the premises." *Durda v. Chembar Dev. Corp.*, 95 Mich.App. 706, 710, 291 N.W.2d 179, 181 (1980).

Another panel of the Michigan Court of Appeals, acknowledging that it may be argued "that *Gruskin* requires use of the summary proceedings act to declare a forfeiture.... [held] that in certain circumstances self help is still available and land contract vendors need not necessarily resort to the summary proceedings act. The peaceable retaking of vacant property, such as in this case, is such a circumstance." *Day v. Lacchia*, 175 Mich.App. 363, 374, 437 N.W.2d 400, 404 (1989).

8. Mich.Comp.Laws Ann. § 600.5744 states in pertinent part:

(1) Subject to the time restrictions of this section, the court entering a judgment for possession shall issue a writ commanding the sheriff, or any other officer authorized to serve the process, to cause the plaintiff to be restored and put in full possession of the premises.
....
(3) When the judgment for possession is based upon the forfeiture of an executory contract for the purchase of the premises, the writ of restitution shall not be issued until the expiration of 90 days after the entry of judgment for possession if less than 50% of the purchase price has been paid or until the expiration of 6 months after the entry of judgment for possession if 50% or more of the purchase price has been paid.
....
(6) When the judgment for possession is for nonpayment of money due under a tenancy or for nonpayment of moneys required to be paid under or any other material breach of an executory contract for purchase of the premises, the writ of restitution shall not issue if, within the time provided, the amount as stated in the judgment, together with the taxed costs, is paid to the plaintiff and other material breaches of an executory contract for purchase of the premises are cured.

until March 30, 1993. "If the purchaser timely pays the judgment amount, to either the vendor or the court, no writ may issue and the contract is reinstated to its pre-default status. [Mich.Comp.Laws Ann.] § [600.]5744(6); *Birznieks v. Cooper*, 405 Mich. 319, 275 N.W.2d 221 (1979); *Van-Elsacker v. Erzberger*, 137 Mich.App. 552, 357 N.W.2d 891 (1984); *Tenney v. Springer*, 121 Mich.App. 47, 328 N.W.2d 566 (1982)." *In re Carr*, 52 B.R. 250, 252 (Bankr.E.D.Mich.1985). To the contrary, if the vendee does not timely cure the default within the applicable redemption period, the writ of restitution shall issue and "shall foreclose any equitable right of redemption which the purchaser might have or claim in the premises." Mich.Comp.Laws Ann. § 600.5744(7).

■ Under state law, absent intervention of the Debtor's chapter 11 bankruptcy petition, the Debtor would have no legal or equitable rights to the land contract property as of April 1, 1993, unless the judgment amount was fully paid and the contract reinstated. Is the result different in bankruptcy? Does a federal purpose require a different result?

The Debtor argues that the automatic stay tolls the running of the redemption period, relying upon *In re Carr*, 52 B.R. 250 (Bankr.E.D.Mich.1985). That case holds: "that so long as a purchaser has filed bankruptcy prior to the expiration of the applicable redemption period after a land contract forfeiture judgment has been entered, he or she is protected by the automatic stay, 11 U.S.C. § 362(a), i.e., the stay prohibits the expiration of the redemption period." *Id.* at 259. This judge respectfully disagrees with the rationale and result

of *In re Carr*. Its holding is not supported by either the provisions of the Bankruptcy Code or other authorities, including binding Sixth Circuit precedent.[9]

■ The automatic stay does not operate to toll the running or expiration of a state law redemption period. *Federal Land Bank v. Glenn (In re Glenn)*, 760 F.2d 1428, 1440 (6th Cir.1985), *cert. denied*, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985); *Goldberg v. Tynan (In re Tynan)*, 773 F.2d 177, 180 (7th Cir.1985); *Johnson v. First Nat'l Bank*, 719 F.2d 270, 276 (8th Cir.1983), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); *In re Wallace*, 33 B.R. 29, 32 (Bankr.W.D.Mich. 1983); *In re Owens*, 27 B.R. 946, 948–49 (Bankr.E.D.Mich.1983); *Bank of Commonwealth v. Bevan*, 13 B.R. 989, 994 (E.D.Mich.1981); *cf. Counties Contracting and Const. Co. v. Constitution Life Ins. Co.*, 855 F.2d 1054, 1058–59 (3rd Cir.1988) (§ 362 does not toll running of statutory grace period re insurance policy rights); *contra, In re Carr*, 52 B.R. at 259. Once a redemption period begins to run, it is too late to cure a default over the life of a plan. *Matter of Sabec*, 137 B.R. 659, 669 (Bankr. W.D.Mich.1992) (allowing curing of delinquent real property taxes in a chapter 13 plan because final redemption period had *not* begun to run). Therefore, unless a tolling occurs under some section other than § 362, all the Debtor's land contract rights are extinguished upon the expiration of the redemption period.

■ Even though the automatic stay does not toll the running of the redemption period, in some instances, § 108(b) of the Code may give a debtor additional time.[10]

---

**9.** Sections 362 and 365, as well as § 108, are all "generic" sections of the Bankruptcy Code. 11 U.S.C. § 103(a). For this reason, this judge rejects result-oriented distinctions which are premised upon alleged differences between chapter 7 liquidation and chapter 11, 12 or 13 reorganization.

**10.** 11 U.S.C. § 108(b) states:

(b) Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected

under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 60 days after the order for relief.

Section 108(b) explicitly gives a debtor an extension of time and overrides state statutory redemption periods. *See, e.g., In re Glenn,* 760 F.2d at 1440; *Johnson v. First Nat'l Bank,* 719 F.2d at 270; *In re Owens,* 27 B.R. at 950; *Bank of Commonwealth v. Bevan,* 13 B.R. at 994. In this contested matter, the redemption period expired on March 30, 1993. The § 108(b) "60 days after the order for relief" expired on March 7, 1993. Because the state redemption period expires later than the § 108(b) extension, the state deadline applies.[11] The Debtor lost all rights in the land contract premises as of April 1, 1993 because it failed to timely redeem.[12] The land contract is extinguished and the Debtor's prior rights cannot be resuscitated by this court.

■ Although the Debtor has no legal right in the real property under the land contract following expiration of the redemption period, it retains a possessory interest so long as it refuses to vacate. The Debtor's interest is akin to a tenancy at sufferance and may be denoted as possession by sufferance. "[A] tenancy at sufferance is a possessory interest in real property within the scope of the estate in bankruptcy under section 541." *Convenient Food Mart no. 144 v. Convenient Industries of America, Inc. (In re Convenient Food Mart No. 144, Inc.),* 968 F.2d 592, 594 (6th Cir.1992) (citations omitted); *accord, Cuffee v. Atlantic Business and Community Corp. (In re Atlantic Business and Community Corp.),* 901 F.2d 325, 328 (3rd Cir.1990); *In re 48th St. Steakhouse, Inc.,* 835 F.2d 427, 430 (2nd Cir.1987); *Schewe v. Fairview Estates (In re Schewe),* 94 B.R. 938, 942, 946 (Bankr. W.D.Mich.1989) (a possessory interest in real property under a month to month ten-

ancy at will is property of the estate and protected by automatic stay). The automatic stay protects the Debtor from acts to evict it from the hotel real property unless, and until, the stay is modified.

Relief from the automatic stay will be granted when "cause" exists. § 362(d)(1). "Cause" for stay relief is not defined under the Bankruptcy Code. This court has previously discussed the meaning, and has given examples, of "cause" to lift the stay. *Matter of Holly's, Inc.,* 140 B.R. 643, 687–96 (Bankr.W.D.Mich.1992); *Matter of Schewe,* 94 B.R. at 949. This court has previously stated in an analogous situation involving a tenancy at will:

> It is incontrovert[ible] that the Debtors' only possessory rights in the mobile home lot result from their status as tenants at will. Under the facts, because there exists no monetary default, pursuant to M.C.L.A. § 554.134, either the Debtors or the Defendants may terminate the tenancy by giving one month's notice to the other party. Absent the Debtors' Chapter 13 case, it is unquestioned that the Defendants would be permitted to serve a notice to quit and to undertake proceedings to obtain possession of the mobile home lot. This state law right is not vitiated by the bankruptcy filing except for the delay occasioned by the automatic stay. This court will not create new debtors' rights nor will it rely upon equity when such reliance is not warranted. The court will not impose a new lease agreement upon the parties. The court therefore holds that when a debtor-lessee and a lessor have entered into a tenancy at will relationship, and the landlord desires to terminate the tenancy under applicable state

---

**11.** The Debtor argues that § 108(b) does not apply because § 108 refers only to an "order" and not a "judgment", e.g., the Judgment of Possession After Land Contract Forfeiture in this matter. First, this argument is seemingly incoherent. Section 108(b) can only help the Debtor. Second, the argument is without merit. A "judgment" and an "order" are closely analogous, if not synonymous. *Cf.,* Fed.R.Bankr.P. 7054(a) (" 'Judgment' as used in these rules includes a decree and *any order* from which an appeal lies.") (emphasis added).

**12.** Any possible argument by the Debtor that the court may use its equitable powers under § 105 is also unavailing. Absent exceptional circumstances such as fraud, mistake, accident or erroneous conduct, a bankruptcy court may not issue a separate order to toll the running of a statutory redemption period. *See, e.g., In re Glenn,* 760 at 1442. No exceptional circumstances are alleged to exist in this contested matter.

law, "cause" exists to modify the stay to permit the lessor to exercise its rights. *Matter of Schewe*, 94 B.R. at 950.

■ The court holds that when a land contract relationship is extinguished after running of the statutory redemption period, and a debtor-vendee is holding over in possession by sufferance, "cause" exists to modify the stay. The vendor may then obtain a writ of restitution to evict the debtor-vendee. *Gillam v. Samuels*, 32 B.R. 393, 394 (E.D.Mich.1983) (citations omitted) ("The writ of restitution is simply the legal means by which possession is returned to [the vendors]."). Relief from stay for the Bank is warranted.

■ Alternatively, the Bank has sought this court to require the executory land contract to be assumed or rejected by the Debtor. Must this requested relief be considered by this court?

An argument exists that § 365 may extend the statutory redemption period. *Moody v. Amoco Oil Co.*, 734 F.2d 1200 (7th Cir.1984). In *Moody*, that court held "that section 108(b) does not apply to curing defaults in executory contracts. Section 365 specifically governs the time for curing defaults in executory contracts, and thus, it controls here." *Id.* at 1215 (citation omitted). This holding is irrational because it invalidates § 108(b) in the context of complying with a statutory redemption period or a cure period.

The proper reading of the Bankruptcy Code reconciles § 365(d)(2), which allows a chapter 11 debtor in possession to assume an executory contract at any time before confirmation of a plan, and § 108(b), which strictly limits the period to cure a default. To assume an executory contract, which is in default as of the filing date and is subject to the running of a redemption period, a two-step process may be utilized. First, the prepetition statutory default must be cured within the § 108(b) time limitation. Second, the debtor may *then* have additional time to determine whether to assume or reject the contract under § 365. Alternatively, a debtor may choose to utilize a one-step process by which all defaults, both prepetition and postpetition and whether subject to the statutory redemption period or not, are cured, and adequate assurance of future performance is given, thereby allowing assumption of the executory contract, *provided* the one-step assumption is sought or occurs before the expiration of the redemption period.

This interpretation harmonizes both Code sections and gives each section full operative meaning. "One fundamental axiom of statutory construction is the 'whole statute' interpretation. *See* 2A N. Singer, Sutherland Statutory Construction § 46.05 (1992) [hereinafter Sutherland]. This axiom stands for the proposition that a statute must be read in its entirety 'so as to produce a harmonious whole.' *Id.*" *In re Hall*, 151 B.R. 412, 425 (Bankr.W.D.Mich. 1993). Using this statutory construction, § 108(b) of the Bankruptcy Code is not emasculated or rendered meaningless. Further, the treatment of the running of redemption periods, whether in a mortgage foreclosure or in a land contract forfeiture situation, is consistent. This statutory construction also recognizes the distinction between instances when the redemption period or time to cure (1) has expired prepetition, (2) has begun running prepetition but will not expire until some time postpetition, and (3) has not begun to run as of the bankruptcy filing date.[13]

In *Counties Contracting and Constr. Co. v. Constitution Life Ins. Co.*, 855 F.2d 1054 (3rd Cir.1988), the argument that a debtor had *carte blanche* to assume a contract while ignoring § 108(b) was rejected.

---

**13.** Of course, "if applicable nonbankruptcy law, an order [or judgment] entered in a nonbankruptcy proceeding, or an agreement [does not fix or has not fixed] a period within which the debtor ... may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act", § 108(b), there is no nonbankruptcy time limitation to effectuate a cure and no § 108(b) bankruptcy extension is applicable or necessary. Under such a circumstance, a debtor would not be constrained by the § 108(b) time limitations and would be allowed to assume (and cure if necessary) an executory contract within the time allowed by § 365(d).

Despite [the chapter 11 debtor's] argument that it had until confirmation of the bankruptcy plan to assume or reject this contract, we find, instead, as an alternative holding concerning the inapplicability of § 365, that once the 60–day period [under § 108(b) ] expired without any action being taken by [the debtor] to assume the contract, the contract expired. Once the contract is no longer in existence, the right to assume it is extinguished. A contract may not be assumed under § 365 if it has already expired according to its terms. 2 Collier on Bankruptcy ¶ 365.04; *In re Anne Cara Oil Co.*, 32 B.R. 643 (Bankr.D.Mass. 1983).

*Counties Contracting*, 855 F.2d at 1061. This court agrees with the Third Circuit.

The Debtor's expired land contract is not now assumable. The land contract is now only a phantom because it has expired and cannot be revived. The Bank's request to establish a deadline for the Debtor to assume or reject the contract is moot. *Thomas Sysco Food Servs. v. Martin*, 983 F.2d 60 (6th Cir.1993); *International Union v. Dana Corp.*, 697 F.2d 718, 720–21 (6th Cir.1983) ("Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.") (citation omitted).

The Bank has also requested an administrative expense award for the Debtor's continued post-filing use of the hotel premises. Allowance of an administrative claim may be warranted if the Bank can prove the necessary elements. *See, e.g., Employee Transfer Corp. v. Grigsby (In re White Motor Corp.)*, 831 F.2d 106 (6th Cir.1987); *Matter of Zook*, 83 B.R. 447, 448–50 (Bankr.W.D.Mich.1988); *cf. Durda v. Chembar Dev. Corp.*, 95 Mich.App. 706, 715, 291 N.W.2d 179, 183 (1980) (under Michigan law "where a defaulting land contract vendee remains in possession of the property and does not redeem he is liable for the reasonable rental value from the date the period for cure expired until he vacates the property.")

At this time, determination of this issue is premature. Evidence has not been submitted regarding the necessary elements. Further, the Debtor has not yet vacated the property. The Bank may renew its motion for allowance of an administrative expense on a later date and the court will schedule a hearing.

### CONCLUSION

The automatic stay does not toll the running of the land contract forfeiture redemption period. Because the redemption period has expired, the land contract is extinguished and cannot be revived by this court. Cause exists to grant the Bank relief from stay. The Bank's alternative motion to require the Debtor to assume or reject the previous executory land contract is moot. It is now premature to decide whether the Bank holds a valid administrative claim. An order will be entered accordingly.