**In re G–N PARTNERS, aka G–N Roberts Properties, a Minnesota general partnership, Debtor.**

**Bankruptcy No. 4–85–342.**

United States Bankruptcy Court, D. Minnesota.

April 9, 1985.

See also, 48 B.R. 459.

John C. Thomas, Oppenheimer, Foster, Wolff, Shepard & Donnelly, Minneapolis, for movant.

William I. Kampf, Kampf, Lorey, Landsman and Zerby, St. Paul, for debtor.

ROBERT J. KRESSEL, Bankruptcy Judge.

This matter came on for hearing on the motion of the debtor seeking various forms of relief. William I. Kampf appeared for the debtors and John C. Thomas appeared for Roberts Construction, Inc. (Roberts).

### FINDINGS OF FACT

1. The debtor is a Minnesota general partnership composed of Metro Property Management Company, a Minnesota corporation, and John R. Neumeier. G–N formerly had a third partner, Jack W. Greene, who assigned his partnership interest to Neumeier on February 18, 1985.

2. Roberts Construction, Inc. is the owner of 66 parcels of real estate located in Ramsey County, Hennepin County and Dakota County, Minnesota, of which 35 parcels are apartment buildings and 31 parcels are warehouse buildings.

3. For some time prior to August of 1984, Roberts negotiated with Metro, Neumeier and Greene to purchase the real estate owned by Roberts.

4. On August 9, 1984, Roberts signed an option agreement with Metro, Neumeier and Greene effective August 7, 1984. Metro, Neumeier and Greene paid $50,000.00 for the option which was to expire at 4:00 P.M. on September 7, 1984. The purchase price for the real estate was $53,778,519.00.

5. On September 7, 1984, Metro, Neumeier and Greene exercised their option by paying Roberts $450,000.00 and entering into earnest money contracts to purchase the real estate. The earnest money contracts required closing by 11:00 A.M. on November 30, 1984.

6. Roberts had arranged cash discounts on various mortgages on the real estate, which discounts would have been available if the debtor had performed under its earnest money contracts. Those discounts are apparently no longer available.

7. Metro, Neumeier and Greene were unable to perform under the earnest money contracts which required them to pay Roberts at closing $43,221,519.00 and deliver a promissory note and mortgage to Roberts in the amount of $10,057,000.00.

8. As a result of the default, Roberts served a written notice of cancellation in conformity with Minn.Stat. § 559.21 under which the earnest money contracts would have terminated on December 30, 1984.

9. On December 6, 1984, Roberts entered into a second option agreement, this time with the debtor, a partnership consisting of the three buyers under the previous option agreement. The debtors paid $400,000.00 for the second option which was to expire at 11:00 A.M. on March 1, 1985.

10. This second option agreement differed from the first in that it did not call

for the execution of earnest money contracts or the payment of earnest money on exercise of the option but rather provided for exercise of the option by full performance of the terms of sale; i.e., payment to Roberts of $43,321,519.00 in cash, execution of a promissory note and mortgage for $10,057,000.00, payment of certain real estate taxes and the execution of other closing documents.

11. In addition to the agreements between Roberts and the debtor as to the details of exercising the option, the second option agreement contained provisions for condemnation, casualty loss, maintenance of insurance, brokerage fees, collection of rents, management of property during the option period, adjustment of operating expenses and rents, proration of real estate taxes as well as covenants by the debtor regarding confidentiality and an agreement not to market the property.

12. The second option agreement was signed by Roberts and by Neumeier on behalf of the partnership. Neumeier signed the second option agreement on December 17, 1984, which was effective by its terms as of December 6, 1984.

13. On February 27, 1985, the debtor signed an Agreement to Assign Option with Theodore P. Netzky. Pursuant to the assignment agreement, the debtor will receive $2,000,000.00 if Netzky exercises the second option agreement.

14. The debtor filed a petition under Chapter 11 of Title 11, United States Code, on March 1, 1985, at 10:24 A.M., 36 minutes prior to the expiration of the second option.

15. In addition to the various sums already paid to Roberts, the debtor has incurred the following expenses in connection with the option agreement:

(a) $49,617.64 for 35 surveys of the apartments described in the option;

(b) $36,250.00 for analysis of the income and expense of the industrial properties by Coopers & Lybrand, Certified Public Accountants;

(c) $31,000.00 for appraisals of the various properties to Russell Smith & Associates;

(d) $10,000.00 for appraisals to Shenehon-Goodlund-Taylor, Inc.;

(e) $3,000.00 for appraisals to Newcombe-Hansen Appraisals, Inc.;

(f) $5,000.00 for lenders' fees to First Federal Savings & Loan Association;

(g) $65,000.00 for attorneys' fees to Gray, Plant, Mooty, Mooty & Bennett;

(h) $13,300.00 for engineering reports to Northwest Design;

(i) $5,173.00 for photographs to Ron Olson Photography;

(j) $3,135.00 for expense studies of the project to Boulay, Heutmaker, Zibell & Co., Certified Public Accountants; and

(k) approximately 1,500 hours of time for internal employees of the partners in examining the seller's books and records and the properties.

16. Netzky requests a period of approximately six months from the filing of the case to arrange financing, do market surveys, do income and expense analyses, inspections and appraisals and other work preliminary to deciding where to exercise the option.

### CONCLUSIONS OF LAW

The debtor has made this motion seeking various forms of relief but is basically seeking through various uses of §§ 365 and 108(b) to retain the second option agreement for a sufficient length of time to allow Netzky to exercise the option which will result in a payment of $2,000,000.00 to the debtor. At least four important questions are raised by the debtor's motion.

1. Was the second option agreement an executory contract within the meaning of 11 U.S.C. § 365 when the debtor filed its Chapter 11 petition?

2. Assuming that the second option agreement was an executory contract when the case was filed, does it remain assumable notwithstanding the expiration of the option period in the agreement?

3. Does 11 U.S.C. § 108(b) extend the time for the debtor to exercise the option for 60 days after the commencement of the case?

4. Assuming that § 108(b) does so extend the time for exercising the option, may the court further extend the time provided in § 108(b)? [1]

## I.

To say that much has been written and little concluded about what constitutes an executory contract is an understatement. Hume noted that "Beauty in things exists in the mind which contemplates them." I think that the same is true of executory contracts.

Section 365(a) provides, "[T]he trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a) (1984). Nowhere in § 365 is an executory contract defined nor is the legislative history particularly helpful, although executory contracts are said to "include" contracts on which performance remains due to some extent on both sides. H.Rep. No. 595, 95th Cong., 1st Sess. 347 (1977). *See also* S.Rep. No. 989, 95th Cong., 2nd Sess. 58 (1978), U.S.Code Cong. & Admin. News 1978, p. 5787. This is basically the reasoning espoused by Professor Countryman in his series of articles in the Minnesota Law Review. V. Countryman, *Executory Contracts in Bankruptcy: Part 1*, 57 Minn.L.Rev. 439 (1973); *Part 2*, 58 Minn.L.Rev. 479 (1974). Roberts argues that the Eighth Circuit has adopted a definition of executory contract which would not include the second option agreement. *See Jenson v. Continental Financial Corp.*, 591 F.2d 477 (8th Cir.1979); *Northwest Airlines, Inc. v. Klinger (In re Knutson)*, 563 F.2d 916 (8th Cir.1977).

If the point is to find obligations unperformed on both sides of the contract, that can probably be done with the second option agreement. Roberts had a continuing obligation to sell the real estate to the debtor if the option was exercised while the debtor had various covenants regarding confidentiality and attempts to sell the property as well as some contingent obligations in the event that it decided to exercise the option. Contingency of an obligation does not prevent its being executory under § 365. *Lubrizol Enterprises v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.)*, 756 F.2d 1043 (4th Cir.1985). *See also In re Smith Jones, Inc.*, 26 B.R. 289, 292 (Bkrtcy.Minn.1982).

More to the point, however, Roberts' argument fails to analyze what is an executory contract in light of the purposes behind § 365: to allow a trustee to pick and choose among the debtor's agreements and assume those which benefit the estate and reject those which do not.[2] The sole fact that the second option agreement did not require the debtor to purchase the real estate does not mean that its right to purchase the real estate was not executory at the time that it filed its Chapter 11 petition. As noted by the district court, "It is inappropriate to apply a generalized rule such as Countryman to all situations.... To hold otherwise would be inconsistent with the Code's underlying policies of 'benefit to the estate' and 'rehabilitation'". *All-American Life and Casualty Co. v. Adolphsen (In re Adolphsen)*, 38 B.R. 780, 781 (D.Minn.1983) *aff'ing In re Adolphsen*, 38 B.R. 776 (Bkrtcy.Minn.1983). *See also In re Booth,* 19 B.R. 53 (Bkrtcy.Utah 1982).

Even the Eighth Circuit in *Jenson v. Continental Financial Corp.* was speaking about rejection of a contract where the non-bankrupt party had fully performed but the bankrupt had not fully performed, and concluded that such a contract was not

---

1. I suspect that each of these questions could easily be the subject of a lengthy opinion or law review. The time constraints under which the parties are operating prevent me from writing either, which I suspect is a matter of much relief to the parties and my secretary.

2. 11 U.S.C. § 1107 provides, with certain exceptions not applicable here, that a debtor-in-possession has the rights and powers of a trustee.

**466**

executory because "a rejection by the trustee would neither add to nor detract from the estate's benefits or liabilities." 591 F.2d at 481 n. 5. Applying the Eighth Circuit's analysis of whether or not treating an agreement as an executory contract would add to or detract from the estate's benefit or liabilities would lead us to conclude that this option agreement is an executory contract. Not only does treating the second option agreement as an executory contract add to the estate's benefits by allowing it to assume the second option agreement, it will allow the debtor to assign it as well. 11 U.S.C. § 365(f). As was stated by another court,

> It seems clear, at least to this court, that bankruptcy courts should not be bound by static definitions of what is an executory contract, but should strive to satisfy the purposes of the Act in conjunction with the goals of the debtor (or trustee), in order that equity may be served. Therefore, I would adopt the approach of *Booth* as the wiser course, although I have no doubt that, as Judge Mabey explained, the courts have been informally doing so all along. In so choosing, I do not think there is effected any repudiation of the Countryman rule, but merely a recognition of its function and its limitations. I am fairly certain that no contract which could not pass Countryman muster could ever be called "executory", within the meaning of the Act. On the other hand, Countryman sets out only the threshold inquiry, and leaves for the courts further considerations to determine whether a contract is "truly executory". On that basis, Countryman serves more as an "exclusionary" rule rather than as the ultimate test of an executory contract.

*In re Gladding Corp.*, 22 B.R. 632, 635 (Bkrtcy.Mass.1982). I conclude that the second option agreement was an executory contract when the debtor filed its petition.

## II.

How long does the second option agreement remain "executory"? By its terms, for only 36 minutes after the petition was filed. Absent the filing of a bankruptcy petition, the debtor's right to exercise its option would have terminated at 11:00 A.M. on March 1, 1985, and then the question of whether it was ever an executory contract becomes moot. All of this discussion about executory contracts only helps the debtor if the contract remains subject to assumption past 11:00 A.M. on March 1, 1985. The mere fact that I have concluded that the second option agreement was an executory contract when the case was filed does not mean that the debtor still has the opportunity to assume it. Section 365 does not come right out and tell us what it means to assume an executory contract, although it does put various exceptions and qualifications on assumptions of executory contracts. Nothing in Section 365 makes a contract executory after it expires by its own terms.

Assumption of any executory contract or expired lease basically means assuming and performing the obligations of the agreement or lease in conformity with the terms of the executory contract or lease except as specifically otherwise provided in § 365. Nothing in § 365 gives a trustee the right to extend indefinitely a time provision in an option any more than a trustee could extend the right to occupancy under a lease past the stated lease period by purporting to assume it. Thus we must look elsewhere to see if there is any such extension.

## III

First it should be noted that everyone agrees that the automatic stay found in 11 U.S.C. § 362(a) does not act as an extension of the time to exercise the option. *See Martinson v. First National Bank of Oakes (In re Martinson)*, 731 F.2d 543 (8th Cir.1984), *Johnson v. First National Bank of Montevideo*, 719 F.2d 270 (8th Cir.1983), *cert. den.*, —— U.S. ——, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984).

The debtor argues that § 108(b) extends the time within which it can exercise its

option under the second option agreement. Section 108(b) provides,

> Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or .
>
> (2) 60 days after the order for relief.

11 U.S.C. § 108(b) (1984). The Eighth Circuit has already concluded that § 108(b) extends the time to redeem from a mortgage foreclosure. *See Martinson v. First National Bank of Oakes (In re Martinson)*, 731 F.2d, 543 (8th Cir.1984); *Johnson v. First National Bank of Montevideo*, 719 F.2d, 270 (8th Cir.1983), *cert. den.*, —— U.S. ——, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). The district court has likewise concluded that § 108(b) extends the time to cure defaults under a contract for deed after service of notice of cancellation. *R.E. Partners v. Hynnek, (In re Hynnek)*, CIV 3–83–1324 (D.Minn. Apr. 10, 1984).

■ Roberts argues that exercising contractual obligations like this is not within the scope of § 108(b) since it is not a default. Roberts is probably right that failure to exercise the option is not a default since the debtor was under no obligation to exercise the option. However § 108(b) is broader than curing defaults as is obvious from its reading; Congress included the language "perform any other similar act". Again Roberts fails to read § 108(b) in light of its purpose, which is to give a trustee at least 60 days after the filing of a case to preserve the interests of the estate by doing those things which the debtor

neglected to do or was unable to do within the originally prescribed time. This case falls squarely within that purpose by allowing the trustee or here, the debtor-in-possession, to do what the debtor was unable to do prior to the filing of the case. I think that the Eighth Circuit recognized that principle in the *Johnson* case when it held that § 108(b) extended the redemption period where it would otherwise expire within 60 days of the filing of a bankruptcy petition. In some respects the right to redeem is similar to the right to exercise an option. It is the right (but not the obligation) to pay a specified sum of money to buy real estate from the person that purchased it at the foreclosure sale. Redeeming is not curing a default but in the eyes of the Eighth Circuit it was the performance of a similar act. The fact that the right to perform under this option agreement is contractual rather than statutory should not insulate it from the statutory benefits of § 108(b). Thus I conclude that § 108(b) extends the time for the debtor to exercise its option for 60 days after the filing of the petition on March 1, 1985.

### IV.

However this is not enough for the debtor; it wants more. The debtor requests that it be given six months from the filing of the case to assume the second option agreement. It asks therefore that I extend the 60 days provided under § 108(b) for approximately 120 more days. Roberts argues that I am without the power to do so. Roberts, like many others, cites *Johnson* for the proposition that courts may not extend the time period provided under § 108(b). However, *Johnson* is mis-cited for that proposition for several reasons. What the Eighth Circuit held in *Johnson* was that "[Section] 105(a) may not be invoked to toll or suspend the running of a statutory period of redemption absent fraud, mistake, accident or erroneous conduct on the part of the foreclosing officer." 719 F.2d at 274. So actually what the

Eighth Circuit held was that the court has the power to extend the statutory redemption period but only under very limited circumstances. That is different from saying that the court is without the power to extend time periods.

Additionally, a close reading of *Johnson* will disclose that the Eighth Circuit never really discussed whether the § 108(b) period of 60 days could be extended. In *Johnson* the bankruptcy court, purporting to exercise its powers under § 105(a), had extended indefinitely the statutory redemption period without any reference to section 108(b). That use of § 105(a) was reversed by the Eighth Circuit. The Eighth Circuit discussed § 108(b) but only as part of its discussion of whether or not the automatic stay in § 362(a) indefinitely extended the redemption period, concluding that § 108(b) was the more specific and applicable section and therefore concluded that § 362(a) did not extend the redemption period. The Eighth Circuit did not discuss whether or not the § 108(b) period could be extended since that was not an issue in *Johnson.*

Also I note that the *Johnson* decision was in large part grounded on a feeling by the Eighth Circuit that the Minnesota statutory scheme for foreclosure of mortgages was lengthy, replete with procedural safeguards for debtors and part of an overall statutory scheme for dealing with real property rights, and therefore it was reluctant to allow interference with those state statutory property rights. Most if not all of those concerns are absent from this contractual arrangement.

I think some of the ambiguities in *Johnson* were implicitly discussed by the Eighth Circuit in *Martinson.* *Martinson* was also a case where attempts were made to extend statutory redemption periods, in that case under North Dakota statutes. There the Eighth Circuit said, "Because the bankruptcy court's order suspending the redemption period came after the expiration of the redemption period, the suspension language of section 108(b)(1) does not ap-

ply.", noting further that "section 108(b)(1) provides for the extension of the period of redemption when there has been a 'suspension of such period occurring on or after the commencement of the case'". 731 F.2d at 544–545. The clear implication by the *Martinson* court is that the court can extend the statutory redemption period as long as the order is entered within any extension of that period under § 108(b).

█ Nothing in § 108 expressly says that the court may extend the time periods there provided. Then again, nothing expressly says that it cannot, and the Eighth Circuit has indicated that time periods may be extended as long as they are done before the expiration of the statutory period and as long as the power to extend is carefully exercised.

### V.

█ All of this really leads us to yet another question which was not posed at the beginning of this discussion. *Should* the § 108(b) period be extended and if so, for how long? The debtor asks that it have six months because its buyer wants that long to decide whether or not to exercise the option. I think that such a period of time would be unfair to Roberts. Roberts describes what the debtor proposes to do as "holding it hostage". While that is a dramatic way of putting it, it does reflect the problems it creates for Roberts in having to commit $54,000,000.00 worth of real estate for a six month period without knowing if the option will ever be exercised. The first option agreement was for one month for which Metro, Neumeier and Greene paid $50,000.00. The second option agreement was for approximately three months for which the debtor paid $400,-000.00. Thus the debtor has had all the time it needs to make all the appropriate analyses and appraisals in deciding whether or not the option price is a reasonable one. Its problems are strictly financial; it has been unable to raise the necessary

financing to exercise the option. Section 108(b) is designed to give the trustee 60 days in which to come up with the financing that the debtor was unable to arrange. It is not designed to create a whole new option period for a third party even if the debtor benefits in the process. If the debtor needed a few extra weeks to obtain financing that would be one thing, but here the debtor wants to start the whole process over again. While I have concluded that the Court has the power to extend the § 108(b) time, I feel that such extensions should be rare.

Thus I conclude that the debtor-in-possession is not entitled to any more than the statutory 60 day period. However because of the uncertainty over the questions we have been discussing, the parties have essentially done nothing while awaiting this order. The parties have acted diligently and expeditiously in presenting the problem and I have done my best to analyze it and resolve it as expeditiously. However in the meantime, much of the 60 day period has expired. Thus I will restore the 60 days in which the debtor has to exercise its option by giving it 60 days from the date of this order to do so.

Such a resolution essentially makes the debtor's motion regarding setting a deadline for it to assume or reject the second option agreement as an executory contract moot, since in this case assumption is no more than the exercise of the option in conformity with its terms. In any case, 11 U.S.C. § 365(d)(2) allows a trustee or debtor-in-possession in a Chapter 11 case to assume or reject an executory contract any time before confirmation of a plan and the debtor has really given no good reason why that indefinite period should be changed.

## ORDER

THEREFORE, IT IS ORDERED: the time for the debtor to exercise its option under the agreement dated as of December 6, 1984, between Roberts Construction, Inc. and G–N Partners is extended to 60 days after the date of this order at 11:00 A.M. Central Daylight Time.