■ LUMBERMENS MUTUAL CASUALTY COMPANY, Appellant, v SUSAN COMPARATO et al., Respondents.—Judgment of the Supreme Court, New York County (Andrew R. Tyler, J.), entered February 25, 1988, which adjudged that the policy of insurance issued by additional respondent-respondent New York Central Mutual Fire Insurance Company (New York Central) had been validly canceled and dismissed the petition for a permanent stay of arbitration by petitioner-appellant Lumbermens Mutual Casualty Company (Lumbermens), is unanimously reversed, on the law, with costs, the petition is granted, and the arbitration permanently stayed.

On November 2, 1985, a vehicle owned and operated by Susan Comparato was involved in an accident with a vehicle owned by Eversley Forte. Lumbermens was Comparato's insurance carrier, New York Central was Forte's. It is undisputed that the policy issued by New York Central to Forte would have covered his vehicle had it been in effect on the date of the accident. However, New York Central contended that the subject policy was canceled for nonpayment of premiums on February 24, 1985. Comparato then filed a demand for arbitration with Lumbermens asserting that Forte's vehicle was uninsured on the date of the accident.

On November 24, 1986, the IAS court granted an order staying arbitration pending a preliminary trial to resolve the issue of whether or not Forte's vehicle was covered by the subject policy on the date of the accident. The matter was subsequently tried on December 10, 1987.

The parties stipulated as to the existence, but not the cancellation, of the subject policy. Roy Katoff, the vice-president of Kings Premium Service Corporation (Kings), the entity which financed the premium for the subject policy, was called on behalf of New York Central. Katoff gave testimony regarding his general knowledge of Kings' practices with respect to payments, and stated that because Forte had not made required premium payments, the corporation followed its cancellation procedures.

Katoff's testimony regarding the history of the subject policy and its cancellation was based upon his general knowledge of the corporation's practices and his reading of company files during the trial. These formed the basis of his statements that Kings sent out a notice of intent to cancel on February 5, 1985, and that when no premium was subsequently received, the policy was canceled.

Significantly, Katoff acknowledged that he had no personal knowledge of the facts. He testified that one Melvin Chinitz, still in the employ of Kings, was, in fact, responsible for the mailing. However, Chinitz was not called to testify, nor did he submit to the court any affidavit indicating that he had effectuated the physical mailing of the cancellation documents in question. Katoff further conceded that while Chinitz was to check his mailing lists, which were maintained for verification purposes, against the company computer runs, the lists did not specify the addresses to which the documents were mailed. Moreover, the mailing list, which was introduced into evidence at trial, misspelled Forte's name. Indeed, Katoff admitted that the notice of intent to cancel and cancellation bore spelling errors.

Lumbermens argued that the purported cancellation was invalid because, *inter alia,* the mailing of the documents was not in compliance with the strict legal standard. However, the IAS court ruled that a valid cancellation had been effectuated, stating: "He [Forte] hasn't been denied insurance. He was given insurance and he didn't pay for it."

The court's oral decision of December 10, 1987 and subsequent written decision dated February 25, 1988, in addition to finding the cancellation of the subject policy valid, dismissed the petition by Lumbermens for a permanent stay of arbitration. The court did not address any further issues.

Upon this record, Lumbermens asserts that the evidence adduced at trial was insufficient to prove that New York Central's policy on the subject vehicle was effectively canceled prior to the accident. We agree.

Once the parties stipulated that New York Central had insured the subject policy, it became incumbent upon the insurer to come forward with proof of the affirmative defense that the policy had been effectively canceled prior to the date of the accident, since the burden of proof rests with the party seeking to rely upon the alleged cancellation. *(Viuker v Allstate Ins. Co.,* 70 AD2d 295, 299 [2d Dept 1979]; *Felician v State Farm Mut. Ins. Co.,* 113 Misc 2d 825, 826 [Sup Ct, Queens County 1982].)

Section 576 of the New York Banking Law enumerates the elements required for a valid cancellation. Pursuant to subdivision (1) thereof, when a premium finance agency seeks to cancel an insurance contract upon default, "the contract shall not be canceled unless such cancellation is effectuated in accordance with the provisions in paragraph (a) through (g)."

*(Felician v State Farm Mut. Ins. Co., supra,* at 827; *Anzalone v State Farm Mut. Ins. Co.,* 92 AD2d 238, 239 [2d Dept 1983]; Banking Law § 576 [1].) For a notice to be deemed duly mailed: "[s]ervice of the notice of intent to cancel or notice of cancellation by mail shall be effective provided that the notices are mailed to insured's last known address as shown on the records of the premium finance agency. The records of the premium finance agency shall be presumptive evidence as to the correctness of such address." (Banking Law § 576 [1] [b].)

New York Central failed to provide sufficient proof that Kings, the premium finance company, properly notified Forte of the cancellation. First, Katoff's testimony was woefully lacking regarding any office practice "geared so as to ensure the likelihood that a notice of cancellation [was] always properly addressed and mailed." *(Nassau Ins. Co. v Murray,* 46 NY2d 828, 830 [1978]; *Matter of Lumbermens Mut. Cas. Co. [Collins],* 135 AD2d 373, 375 [1st Dept 1987]; *Anzalone v State Farm Mut. Ins. Co., supra,* at 239-240.) Although an officer may testify as to office practice and policy, when reliance is placed on a mailing sheet, proof must include testimony that the employee checks the names *and addresses* on the envelopes with those on the mailing sheets in the regular course of business. *(Anzalone v State Farm Mut. Ins. Co., supra,* at 241.) Here, Katoff expressly admitted that the mailing list used did not include the addresses of individuals to whom notices were allegedly sent. Moreover, Katoff acknowledged that Forte's name was spelled incorrectly. The juxtaposition of these facts clearly leaves open the possibility that a notice could have been sent to the wrong address. Moreover, although the record contains a receipt from the post office stating that it had received the notice of cancellation to mail to Forte, there was no proof that the material was sent to the proper address. *(See, Friedman v Allcity Ins. Co.,* 118 AD2d 517, 518 [1st Dept 1986].)* Therefore, Katoff was unable to provide the required testimony that the addresses on the envelopes were checked back to a standard list, since no such list including addresses was introduced.

Second, Chinitz, who was Katoff's employee, and presumably possessed the personal knowledge which Katoff was lacking, was not called to testify, nor did he submit an affidavit to the court regarding the mailing. Given the deficient nature of Katoff's testimony to internal precautionary procedures, only the testimony of Chinitz could possibly have established that a duly effectuated mailing had taken place. *(Matter of Lumbermens Mut. Cas. Co. [Collins],* 135 AD2d, *supra,* at 374-375

[where Katoff testimony was held insufficient and Chinitz did not testify, court correctly concluded that insurance company failed to establish conclusively that a cancellation notice was duly mailed]; *Felician v State Farm Mut. Ins. Co., supra,* at 828-829.)

Since the proof of mailing was insufficient to establish a valid cancellation, the policy issued by New York Central remained in full force and effect on the date of the accident.

Accordingly, we reverse the IAS court and grant the petition permanently staying arbitration. Concur—Murphy, P. J., Sullivan, Carro, Wallach and Rubin, JJ.