**FEDERAL INSURANCE COMPANY,**
**Plaintiff,**

v.

**Donald T. SHELDON, Defendant**
**and Third–Party Plaintiff,**

v.

**Don L. HORWITZ, Trustee for the**
**Liquidation of Donald Sheldon &**
**Co., Inc., Third–Party Defendant.**

**No. 90 Civ. 2256 (PKL).**

United States District Court,
S.D. New York.

Feb. 4, 1993.

Kaye, Scholer, Fierman, Hays & Handler (Jay G. Strum, John W. Schryber, David S. Pegno, of counsel), New York City, for third-party defendant.

Wilson Elser Moskowitz Edelman & Dickler (Jerold R. Ruderman, Glen Feinberg, Mark G. Ledwin, of counsel), New York City, for plaintiff.

## OPINION AND ORDER

LEISURE, District Judge.

Third-party defendant Don L. Horwitz (the "Trustee"), Trustee for the Liquidation of Donald Sheldon & Co., Inc. ("DSCO" or the "Debtor"), now moves this Court for summary judgment dismissing the third-party complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Federal Insurance Company ("Federal") has responded to the Trustee's motion, as the third-party complaint concerns the same issues of law and fact as the first claim for relief in the complaint. Additionally, Federal moves for leave to amend the complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. For the following reasons, the motions hereby are granted.

## BACKGROUND

This is a declaratory judgement action. The Trustee has commenced an adversary proceeding in bankruptcy court against Donald T. Sheldon, DSCO's former President and Chairman, and others, alleging that Sheldon was responsible for losses to-

taling $14 million that ensued from the Debtor's failure. Federal seeks a determination that a $10 million directors and officers policy (the "D & O Policy") issued to the Debtor by Federal does not provide coverage for the Trustee's claim against Sheldon in the bankruptcy court.

As its first claim for relief, Federal alleges that it was not provided with timely notice of the "facts or circumstances having the potential of giving rise to a claim," as required by the policy. Sheldon's answer denied that timely notice was not given. Further, Sheldon filed a third-party complaint against the Trustee, alleging that any failure to give timely notice was the fault of the Trustee, who was in control of the Debtor at the time the policy expired.

DSCO was a broker/dealer of securities. On July 30, 1985, this Court granted the Securities and Exchange Commission's (the "SEC") request for a temporary restraining order against DSCO and its agents and employees, restraining them from violating or aiding and abetting the violation of various securities laws. *See* Affirmation of John W. Schryber, Esq., dated December 20, 1991 ("Schryber Aff."), Ex. 1. The restraining order appointed former United States Bankruptcy Judge Stanley T. Lesser as receiver of DSCO "until such time as the Securities Investor Protection Corporation ("SIPC") makes a determination whether to apply for a protective order appointing a trustee FOR [DSCO] . . . and such trustee is appointed by this Court." Schryber Aff., Ex. 1, at 4. On August 5, 1985, the SIPC applied for an order for relief under the Securities Investor Protection Act ("SIPA"), seeking the appointment of Judge Lesser as trustee for the liquidation of DSCO. On August 9, 1985, the Court granted SIPC's application; the order was made effective as of 4:00 p.m. on August 13, 1985. Additionally, the liquidation proceeding was removed from this Court to the United States Bankruptcy Court for the Southern District of New York, in accordance with section 78eee(b)(4) of SIPA. Don L. Horwitz succeeded Judge Lesser as Trustee upon Judge Lesser's death in February 1987.

On October 13, 1989 the Trustee commenced an adversary proceeding against Sheldon in the bankruptcy court proceeding. The Trustee's complaint alleges that Sheldon and Mary Schad breached their fiduciary and contractual duties to the Debtor by permitting the unlawful conduct that gave rise to violations of the securities laws, as recited in the restraining order. The liability issues in that action were tried before a jury in the bankruptcy court. On July 24, 1992, the jury returned a verdict in the Trustee's favor against both Sheldon and Schad.

Federal is one of several commonly-managed insurance companies known collectively as The Chubb Group of Insurance Companies ("The Chubb Group"). All of the personnel who perform services for Federal and the other companies in The Chubb Group are employed by Chubb & Son, Inc., which also serves as manager of the various entities in The Chubb Group.

The D & O Policy issued by Federal insured DSCO's directors and officers against liability incurred as a result of a "Wrongful Act," which is defined to include a breach of a duty owed by the officer or director. Schryber Aff., Ex. 7. At all relevant times, Sheldon was DSCO's chief executive officer. The D & O Policy also insures DSCO and certain of its corporate affiliates against liability for indemnification claims made against them by their officers or directors. Schryber Aff., Ex. 7.

The policy afforded coverage for claims asserted against the insured during the policy period and for claims brought after the termination of the policy period, provided that the conduct underlying the claim occurred and was reported to Federal during the policy period. Schryber Aff., Ex. 7. Coverage under the policy extends to

> all Loss for which [an] Insured Person becomes legally obligated to pay on account of any claim(s) made against him, individually or otherwise, during or after the Policy Period for a Wrongful Act:
>
> (A) committed, attempted or allegedly committed or attempted by such Insured

Person(s) before or during the Policy Period and

(B) reported to [Federal], in accordance with Section 4, during the Policy Period....

Schryber Aff., Ex. 7, § 1.1. Thus, the policy was a "claims made and reported" policy. Section 4 provides that any insured can give notice of a potential claim and that notice is deemed given "at the time that any Insured first gives written notice to [Federal] of the material facts or circumstances having the potential of giving rise to a claim being made against any Insured Person(s)." Schryber Aff., Ex. 7, § 4.1. Thus, the policy provides coverage in the instant case only if the Trustee provided Federal with written notice, during the policy period, of the material facts or circumstances giving rise to the claims at issue in the underlying action.

The original policy period extended through September 23, 1985. Section 8.8 of the policy permitted acceleration of the expiration date effective

30 days after *receipt by the Parent Organization* at the address designated in Item 2 of the Declarations of a written notice of termination from [Federal].

Schryber Aff., Ex. 7, § 8.8 (emphasis supplied). The Declarations designate Donald Sheldon Group, Inc. ("Group Inc.) as the "Parent Organization" and Group Inc.'s Pompano Beach, Florida offices as the address to which any notice of termination was to be sent. On August 1, 1985, one day after this Court issued the temporary restraining order against DSCO, a written notice of termination was dispatched on Federal's behalf in accordance with the termination provision. Schryber Aff., Ex. 19. Although the policy required that the termination notice be sent to Group Inc., it is undisputed that the notice was addressed to DSCO. The notice was sent to the proper address, however, as DSCO and Group Inc. apparently shared office space in Pompano Beach, Florida. The individual, Judith Duane, who signed for receipt of the envelope containing the notice of termination was neither an agent nor an employee of Group Inc.; Judith Duane was employed solely by DSCO.

Pursuant to the restraining order, the Debtor's branch office operations ceased and any non-ministerial functions that the Debtor performed were conducted out of its New York offices under Judge Lesser's supervision. Mail addressed to and received by DSCO at its Pompano Beach branch office was held until the Friday of the week in which it was delivered and then was forwarded, unopened, to the Trustee in New York. Affidavit of Judith Duane, dated May 31, 1991 ("Duane Aff."), ¶ 4. Duane described the procedures followed for mail delivered to DSCO at its Pompano Beach offices:

If the envelope enclosing [the termination notice] was mailed to DSCO at its Pompano Beach office after the appointment of the DSCO receiver or was released to me after the appointment of the DSCO receiver, that piece of mail would not have been opened or functioned on in any manner at DSCO's Pompano Beach branch office. Rather, in accordance with the practice observed at DSCO's Pompano Beach office after the appointment of the receiver ..., I merely would have bundled that piece of mail together with all other mail received by DSCO during the week of August 3, 1985, and, on or about August 9, 1985, forwarded it by first class mail to the DSCO receiver (or his counsel) in New York.

Duane Aff. ¶ 10. Thus, since the notice of termination would not have been forwarded to New York until August 9, the actual notice could not have been received by Group Inc. or the Trustee until after that date.

Federal admits that a communication it received from the Trustee on September 9, 1985, was sufficient notice of the potential claims against Sheldon. It contends, however, that this notice was untimely, as the policy period closed on September 5, thirty days after the notice of termination was received at the Pompano Beach office. Thus, the issue before the Court is whether Group Inc. effectively received the notice of termination on August 5. If the delivery of the letter to DSCO on August 5

constituted proper notice of Federal's termination of the D & O Policy, then the Trustee's September 9 notice of potential claim was untimely. If, however, effective notice of Federal's termination was received after August 9, then it was received less than 30 days prior to September 9, 1985, and the Trustee's notice was sufficient under the terms of the policy.

Thus, the Trustee moves for summary judgment on the issue concerning whether Federal was provided sufficient notice of the facts or circumstances that might give rise to potential claims against Sheldon. As discussed *supra,* the Trustee argues that the September 9 notice was timely and sufficient notice. Additionally, he argues that Federal's termination was in violation of the automatic stay provision, 11 U.S.C. § 362(a), and that section 108 of the Bankruptcy Code, 11 U.S.C. § 108, provided an extension of time within which DSCO could properly give notice of claims to Federal.[1]

## DISCUSSION

### I. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.,* 949 F.2d 576, 580 (2d Cir.1991). Summary judgment "is appropriate only 'after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's cause, and on which that party will bear the burden of proof at trial.'" *Thornton v. Syracuse Sav. Bank,* 961 F.2d 1042, 1046 (2d Cir.1992) (quoting *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552); *accord Irvin Industries, Inc. v. Goodyear Aerospace Corp.,* 974 F.2d 241, 245 (2d Cir. 1992).

"In deciding whether to grant summary judgment all inferences drawn from the materials submitted to the trial court are viewed in a light most favorable to the party opposing the motion. The nonmovant's allegations are taken as true and it receives the benefit of the doubt when its assertions conflict with those of the movant." *Cruden v. Bank of New York,* 957 F.2d 961, 975 (2d Cir.1992). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." *Id.; accord Taggart v. Time, Inc.,* 924 F.2d 43, 46 (2d Cir.1991); *see also Lang,* 949 F.2d at 580 ("In determining how a reasonable jury would decide, the court must resolve all ambiguities and draw all inferences against the moving party."); *Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991) ("Viewing the evidence produced in the light most favorable to the nonmovant, if a rational trier could not find for the nonmovant, then there is no genuine issue

---

1. The Trustee also argues that by letter dated August 12, 1985, Judge Lesser's counsel informed The Chubb Group, and therefore Federal, of the material facts and circumstances constituting a possible claim against Sheldon. Schryber Aff., Ex. 14. The August 12 letter does not, however, specifically reference the D & O Policy. Rather, it acknowledges the receipt of a termination notice of a broker's bond issued to DSCO by Vigilant Insurance Co. and contests the validity of the termination. The letter references certain attached documents, including a copy of the Order to Show Cause, Temporary Restraining Order and Order Appointing Temporary Receiver for DSCO entered by this Court on July 30, 1985. Additionally, the Trustee's copy of the letter was found in the Trustee's files with copies of the attachments attached. The plaintiff does not admit that these attachments were received, but fails to present any evidence supporting this contention, such as testimony by the recipient that the documents were not received.

While the Court believes the August 12 communication constituted due and sufficient notice of the facts and circumstances giving rise to potential claims against Sheldon and DSCO, it is unnecessary to reach this issue, based upon the Court's disposition of the Trustee's motion for summary judgment on other grounds.

of material fact and entry of summary judgment is appropriate.").

The substantive law governing the case will identify those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there does indeed exist a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511.

■ The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and identifying which materials "it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. Once a motion for summary judgment is properly made, however, the burden then shifts to the nonmoving party, which " 'must set forth specific facts showing that there is a genuine issue for trial.' " *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511 (quoting Fed.R.Civ.P. 56(e)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510. "Conclusory allegations will not suffice to create a genuine issue. There must be more than a 'scintilla of evidence,' and more than 'some metaphysical doubt as to the material facts.' " *Delaware & Hudson Ry. Co. v. Conrail*, 902 F.2d 174, 178 (2d Cir.1990) (quoting *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512, and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). "The nonmovant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere

speculation or conjecture." *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (quotations omitted); *see also Gnazzo v. G.D. Searle & Co.*, 973 F.2d 136, 138 (2d Cir.1992) ("[The Court must] consider the record in the light most favorable to the nonmovant. However, the nonmovant may not rest upon the mere allegations or denials of her pleading, but must set forth specific facts showing that there is a genuine issue for trial.") (quotation and citations omitted). However, the Court draws all reasonable inferences in favor of the nonmoving party only after determining that such inferences are reasonable, considering all the evidence presented. *See, e.g., Apex Oil Co. v. Di Mauro*, 822 F.2d 246, 252 (2d Cir.), *cert. denied*, 484 U.S. 977, 108 S.Ct. 489, 98 L.Ed.2d 487 (1987).

## II. Was the September 9 Notice Timely?

### A. *Application of the Automatic Stay*

■ The Trustee argues that Federal's notice of termination was void *ab initio* because it was issued in violation of the automatic stay. 11 U.S.C. § 362(a). It is well-settled that Federal's power to terminate the contract was stayed as of the filing date of the petition, and Federal does not contest this issue. The section 362(a) stay applies to "any act to obtain possession of property of the estate or … to exercise control over the property of the estate." Included within the scope of the automatic stay are rights flowing to a debtor under a contract of insurance. *See, e.g., Counties Contracting and Constr. Co. v. Constitution Life Ins. Co.*, 855 F.2d 1054, 1057 (3d Cir.1988); *In re Minoco Group of Cos.*, 799 F.2d 517, 519 (9th Cir.1986); *Wedtech Corp v. Federal Ins. Co.*, 740 F.Supp. 214, 217 (S.D.N.Y.1990). Further, actions taken in violation of the stay are void even where the acting party had no actual notice of the stay. *See, e.g., In re Smith*, 876 F.2d 524, 526 (6th Cir.1989); *Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47 (2d Cir.1976), *cert. denied*, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977); *In re O.P.M. Leasing Services, Inc.*, 40 B.R. 380, 403 (Bankr.S.D.N.Y.),

*aff'd,* 44 B.R. 1023 (S.D.N.Y.1984); 2 Collier on Bankruptcy ¶ 362.03 at 362–27 (15th ed. 1988). Therefore, the sole remaining issue is whether the "filing date," for purposes of the automatic stay, was July 30, the date the SEC filed the original complaint against DSCO and others, or August 5, the date the SIPC filed an application for a protective order under SIPA. If the "filing date" is deemed to be July 30, Federal's notice of termination, dispatched on August 1, was in violation of the automatic stay and, accordingly, void.

■ SIPA provides that the "filing date" of a SIPA liquidation relates back to an earlier date under certain circumstances:

> The term "filing date" means the date on which an application for a protective decree is filed under section 5(a)(3) [15 U.S.C. § 78eee(a)(3) ], except that—
>
> .    .    .    .    .
>
> (B) if the debtor is the subject of any proceeding pending in any court or before any agency of the United States or any State in which a receiver, trustee, or liquidator has been appointed and such proceeding was commenced before the date on which such application was filed, the term "filing date" means the date on which such proceeding was commenced....

15 U.S.C. § 78*lll* (7).

The undisputed facts demonstrate that the litigation initiated by the SEC was pending against DSCO at the time of the application for a protective order and that Judge Lesser had been appointed receiver of DSCO. Thus, SIPA's relation-back provision clearly applies, and the "filing date" is deemed to be the date the underlying action was commenced: July 30, 1985. Federal's termination notice, dispatched on August 1, came after the "filing date" and, accordingly, was subject to the provisions of the automatic stay. Because Federal's termination notice was void *ab initio,* notice of potential claims under the policy was timely if received prior to September 23, 1985. Accordingly, the Trustee's notice was timely when dispatched on September 9, 1985. Federal's first cause of action is without merit, and the Trustee is entitled

to summary judgment dismissing the third-party complaint.

**B.  *The Extension Provision of Section 108***

Section 108 of the Bankruptcy Code, which applies to SIPA liquidations pursuant to 15 U.S.C. § 78fff(b), provides that

> [i]f ... an agreement fixes a period within which the debtor ... may file any pleading, demand, *notice, or proof of claim or loss,* cure a default, *or perform any other similar act,* and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—
>
> (1) the end of such period ..., or
>
> (2) 60 days after the order for relief.

11 U.S.C. § 108(b) (emphasis supplied). If section 108 operates to extend the Trustee's time to file the notice of potential claims under the D & O Policy, then the September 9 notice of potential claims constitutes timely notice.

The House Judiciary Report accompanying the Bankruptcy Act specifically refers to insurance claims as an example of the a type of claim entitled to the sixty day extension. H.Rep.No. 95–595, 95th Cong., 1st Sess. 318 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787; *see also Counties Contracting & Constr. Co. v. Constitution Life Ins. Co.,* 855 F.2d 1054, 1058 (3d Cir.1988). Subsection (b) "permit[s] the trustee, when he steps into the shoes of the debtor, an extension of time for filing an action or doing some other act that is required to preserve the debtor's rights." H.Rep.No. 95–595, 95th Cong., 1st Sess. 318 (1977), U.S.Code Cong. & Admin.News 1978, p. 6275.

Assuming *arguendo* that Federal's notice of termination was effective on August 5, the Trustee's contractually imposed time period in which it could give notice had not expired prior to the filing of the petition, which occurred no later than August 13. Thus, the Trustee's notice was timely if it is encompassed within the scope of acts

entitled to the sixty day extension provided for by section 108.

■ Federal contends that section 108(b) does not act to extend the time to report potential claims under the D & O Policy because the notice of termination was "unequivocal" and was to become effective "regardless of any actions taken by DSCO." Memorandum of Law in Opposition to the Trustee's Motion for Summary Judgment Dismissing Sheldon's Third–Party Complaint ("Federal Response") at 21. Cases interpreting section 108, however, demonstrate that Federal's argument is inapposite. For example, it has been held that a debtor who filed a petition for relief thirty-two minutes prior to the expiration of an option contract was entitled to the sixty-day extension provided by section 108 despite the fact that the failure to exercises the option could not be considered a "default." *In re G–N Partners*, 48 B.R. 462, 467 (Bankr.D.Minn.1985). The court noted that section 108 "is broader than curing defaults as is obvious from its reading; Congress included the language 'perform any other similar act.'" *Id.*, 48 B.R. at 467. Similarly, the Eighth Circuit has held that section 108 extends the time in which a debtor may redeem a property from a mortgage foreclosure. *See Johnson v. First Nat'l Bank of Montevideo*, 719 F.2d 270, 278 (8th Cir.1983), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984).

■ Federal also suggests that section 108 may not extend the reporting period because this provision cannot extend insurance coverage. Initially, the Court notes that the Trustee does not seek an extension of the *coverage* of the policy; rather, the Trustee merely requires an extension of the period in which it may report potential claims. Moreover, it is clear that section 108 properly may be applied to extend insurance coverage when read in conjunction with the terms of the policy. Thus, in *In re Econo–Therm Energy Sys. Corp.*, 80 B.R. 137 (Bankr.D.Minn.1987), the court held that, where a debtor had failed to make premium payments, section 108 operated to extend the grace period in which the debtor could cure the default. 80 B.R. at 140. Further, because the policy coverage did not terminate until the end of the grace period, the debtor was entitled to an extension of insurance coverage during the sixty-day extension. 80 B.R. at 140; *accord Counties Contracting and Constr. Co.*, 855 F.2d at 1059; *In re John J. Sullivan, Inc.*, 128 B.R. 7, 10 (D.Mass.1990). The court also rejected the suggestion that insurance contracts were entitled to special treatment under section 108: "I do not think that the nature of the contract should control whether the time to perform is extended under § 108(b)." *In re Econo–Therm Energy Sys. Corp.*, 80 B.R. at 137. The requirement in the instant case that notice of potential claims be given to Federal is analogous to the opportunity to cure presented in the above-cited cases.

Moreover, the language of section 108 explicitly states that the debtor is entitled to an extension of time in which to provide "notice." 11 U.S.C. § 108(b). The Bankruptcy Act has been designed to provide the Trustee a limited time period in which to doing certain acts, which the debtor has failed to do, in order to preserve the debtor's rights. This is exactly the situation presented in the case at bar.

Federal argues that "excusing a delay in notice made beyond the policy period of a claims made policy should not be done since to do so would alter a basic term of the bargained for insurance contract." Federal Response at 20. Clearly, the bankruptcy laws occasionally effect drastic changes in bargained for contracts by terminating, modifying, or, as in the instant case, by extending certain provisions contained therein. The provisions of SIPA and the Bankruptcy Code clearly provide that the Trustee was afforded a 60 day period following the August 13 Order in which to effect notice to Federal of potential claims against Sheldon. Thus, the Trustee's notice, received by Federal on September 9, was timely, and the Trustee is entitled to summary judgment dismissing the third-party complaint.

### C. *Delivery of Federal's Notice of Termination to DSCO*

■ The only entity authorized to receive a notice of termination under the D & O Policy was Group Inc. The burden of proof with respect to whether a policy cancellation was effected rests with Federal. *See Lumbermens Mut. Cas. Co. v. Comparato*, 151 A.D.2d 265, 266, 542 N.Y.S.2d 179, 181 (1st Dep't 1989). Federal admits that the termination notice was addressed to DSCO. The Trustee has presented evidence, unrebutted by Federal, that the person who received on DSCO's behalf the envelope containing the notice of termination was not an employee or agent of Group Inc. *See* Duane Aff.

Federal's contention is, in sum, that receipt of the notice by DSCO constituted receipt by Group Inc. because the two companies occupy space in the same office building:

> It is undisputed that [DSCO and Group Inc.] shared the very same Pompano Beach, Florida office designated in Item 2 of the Declarations of the policy for receipt of any notice from Federal. It is thus inconceivable as to how [Group Inc.] could fail to receive the notice of termination mailed to its principal address as specified in the policy.

Federal Response at 11.

The Contract explicitly provides that the notice of termination does not be come effective until "30 days after receipt by the Parent Organization," defined in the policy as Group Inc. Schryber Aff., Ex. 7, § 8.8(a). Federal fails to even suggest a legal argument explaining how delivery of the notice to DSCO constitutes delivery to Group Inc., other than noting its belief that it is "inconceivable" that any other explanation could be accepted.

The Court, however, finds Federal's argument to be inconceivable. Federal blatantly failed to fulfill the provisions of the contract that it drafted. Federal has failed to suggest any reasonable justification for its thesis that delivery to DSCO satisfied the requirements of the policy. The Trustee has met the burden, imposed upon him by Rule 56 of the Federal Rules of Civil Procedure, to demonstrate the lack of a genuine dispute as to any material facts and his entitlement to judgment as a matter of law. Federal has failed to adduce any evidence suggesting that a reasonable fact finder could grant it relief on its first cause of action. Accordingly, the Trustee is entitled to summary judgment on the first cause of action.

### III. Federal's Motion for Leave to File an Amended Complaint

■ Federal seeks leave to file an amended complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. Following a jury verdict in the adversary proceeding in the bankruptcy court, Federal believes it has additional grounds upon which to disclaim coverage with respect to Sheldon and Mary Schad, on the grounds that the jury verdict constitutes an adjudication of dishonesty and a finding that they obtained personal profit or advantage to which they were not entitled. *See* Affidavit of Glen Feinberg ("Feinberg Aff.") ¶ 13. Thus, Federal seeks to amend the complaint to assert that the claims are not covered pursuant to sections 3.2(D) and 3.2(E) of the policy. *Id.* Additionally, Federal seeks to name Schad as a defendant, "premised upon the same allegations that exist as respects Sheldon," and to name the Trustee as a direct defendant, as he now has a direct interest in the outcome of the instant litigation. Feinberg Aff. ¶ 14. The Trustee has indicated that he does not oppose Federal's request. *See* Letter of David S. Pegno, Esq., Counsel for Don L. Horwitz, Trustee for the Liquidation of Donald Sheldon & Co., Inc., dated October 28, 1992.

Sheldon, appearing *pro se*, objects to Federal's motion on the ground that "the addition of a new party, Mary Schad, would necessarily re-open discovery as to Federal's first claim for relief and unfairly delay the determination of that issue." Memorandum in Opposition to Plaintiff's Motion to Amend Complaint at 1. Additionally, Sheldon argues that Federal was in possession of information indicating that Schad and the Trustee would be appropriate de-

fendants in this action no later than November 1990, when the Trustee filed the complaint against Sheldon and Schad in the adversary proceeding in the bankruptcy court.

Rule 15(a) provides in relevant part that: A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served.... Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Fed.R.Civ.P. 15(a). If the party moving for leave to amend its complaint "has at least colorable grounds for relief, justice does so require unless [the moving party] is guilty of undue delay or bad faith or unless permission to amend would unduly prejudice the opposing party." *S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 42 (2d Cir.1979) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)); *see also Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir.1990) ("Generally, permission to amend should be freely granted."); *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 (2d Cir.1987) ("A motion to amend should be denied only for such reasons as 'undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party.'") (quoting *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir.1981)). Further, it is clear that "there is no prejudice to the defendant where new claims are merely variations on the original theme ... arising from the same set of operative facts as the original complaint." *Hanlin v. Mitchelson*, 794 F.2d 834, 841 (2d Cir.1986).

Initially, the Court notes that, pursuant to an Order dated October 25, 1990, discovery in this action has been limited to the first cause of action of the complaint, concerning whether Federal was timely notified of potential claims against DSCO and Sheldon. The Court has determined that the first cause of action is without merit. *See supra*. Thus, adding Schad as a defendant will not necessitate any duplicative discovery.

Further, the Court is satisfied that Federal's request is made in good faith based upon matters that were unknown at the time the original complaint was filed. Moreover, no undue delay will result from the filing of an amended complaint, and Sheldon will suffer no unfair prejudice. The liberal standards under Rule 15(a) therefore require that this Court grant Federal's motion for leave to amend the complaint.

CONCLUSION

For the foregoing reasons, the motion of third-party defendant Don L. Horwitz, Trustee for the Liquidation of Donald Sheldon & Co., Inc., for summary judgment dismissing the third-party complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure hereby is granted. Additionally, plaintiff Federal Insurance Company's motion for leave to file an amended complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure is granted.

SO ORDERED